**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **STEADFAST INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **Case No.: 6:16-CV-3214-SRB** |
| **ARC STEEL, LLC, et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPLY SUGGESTIONS IN SUPPORT OF
DEFENDANT ARC STEEL, LLC'S MOTION FOR SUMMARY JUDGMENT**

Christopher S. Shank          MO Bar #28760
David L. Heinemann          MO Bar #37622
SHANK & MOORE, LLC
1968 Shawnee Mission Parkway, Suite 100
Mission Woods, KS 66205
Telephone:          816.471.0909
Facsimile:          816.471.3888
chris@shankmoore.com
davidh@shankmoore.com

*Attorneys for Defendant ARC Steel, LLC*

# Table of Contents

**Page**

Table of Authorities ................................................................................................. ii

Overview of Factual Record ................................................................................... F-1

   I.    ARC's Reply to Steadfast's Attempts to Controvert Statements
       in ARC's Statement of Uncontroverted Material Facts ............................... F-1

   II.   ARC's Responses to Steadfast's Statement of Additional
       Material Facts .......................................................................................... F-25

Argument and Authorities ......................................................................................... 1

   I.    The Court Should Grant ARC Summary Judgment on Counts I, IV, and V ............... 1

       A.    ARC is not liable to Killian under Paragraph 12 of the Subcontract ................... 1

       B.    ARC is not liable to Killian under Paragraph 6 of the Subcontract ..................... 2

       C.    ARC is not liable to Killian under Paragraph 11 of the Subcontract ................... 6

       D.    Steadfast has abandoned its claims for equitable subrogation
           and equitable contribution .......................................................................... 8

   II.   The Court Should Grant ARC Summary Judgment on Counts II, III and VI ............. 8

       A.    Steadfast's claims of negligence and negligent misrepresentation
           in Counts II and III fail as a matter of law ................................................... 8

       B.    Steadfast has abandoned its claim for unjust enrichment ................................ 9

   III.  Alternatively, ARC is Entitled to Partial Summary Judgment
       on Several Aspects of Steadfast's Claims .................................................. 10

Conclusion ............................................................................................................. 10

i

## Table of Authorities

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................1

*Banks v. Deere*, 829 F.3d 661 (8th Cir. 2016) ...........................F-25, F-32 to F-38, 2, 6

*Bland v. O.P. & C.M.I.A.*, No. 12-1401-CV-W-SOW,
2014 WL 12102171 (W.D. Mo. Feb. 25, 2014) ...........................................................1

*Buerhle v. City of O'Fallon, Mo.*, No. 4:10CV00509 AGF,
2011 WL 529922 (E.D. Mo. Feb. 8, 2011) ...............................................................F-41

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................1

*CitiMortgage, Inc. v. Chicago Bancorp., Inc.*,
No. 4:12-CV-00246 CDP, 2013 WL 3946116 (E.D. Mo. July 31, 2013) ................................F-28

*City of Miami Gardens v. Wells Fargo & Co.*, 328 F. Supp. 3d 1369 (S.D. Fla. 2018)................4

*Clayton Ctr. Assocs. v. W.R. Grace & Co.*, 861 S.W.2d 686 (Mo. Ct. App. 1993) ......................9

*Cole v. Strauss*, No. 2:13-cv-04200-NKL,
2014 WL 4055787 (W.D. Mo. Aug. 15, 2014)...........................................F-25, F-32 to F-38, 2, 6

*Dapron v. Spire, Inc. Ret. Plans Comm.*, 329 F.R.D. 233 (E.D. Mo. 2019)............................F-28

*Daubert v. NRA Grp., LLC*, 189 F. Supp. 3d 442 (M.D. Pa. 2016),
*aff'd*, 861 F.3d 382 (3d Cir. 2017) .............................................................. F-13, F-40, 4

*Estate of Thompson v. Kawasaki Heavy Indus., Ltd.*, 291 F.R.D. 297 (N.D. Iowa 2013)..............5

*Function Media, L.L.C. v. Google, Inc.*,
No. 2:07-CV-279-CE, 2010 WL 276093 (E.D. Tex. Jan. 15, 2010) ................................4

*Great Am. Ins. Co. of N.Y. v. Vegas Const. Co.*, 251 F.R.D. 534 (D. Nev. 2008)....................F-41

*HM Compounding Servs., LLC v. Express Scripts, Inc.*,
349 F. Supp. 3d 781 (E.D. Mo. 2018)...........................................................F-7

*Hyde v. Stanley Tools*, 107 F. Supp. 2d 992 (E.D. La. 2000),
*aff'd*, 31 F. Appx. 151 (5th Cir. 2001) ..................................................................5

*Laidlaw Waste Sys., Inc. v. Mallinckrodt, Inc.*,
925 F. Supp. 2d 624 (E.D. Mo. 1996)................................................................9

Case 6:16-cv-03214-SRB   Document 322   Filed 05/06/19   Page 3 of 61

*Malone v. Ameren AE*, 646 F.3d 512 (8th Cir. 2011) .......................................................... F-26, 2

*Mason v. Correctional Med. Servs., Inc.*,
559 F.3d 880 (8th Cir. 2009) ........................................................ F-25, F-32 to F-38, 2, 6

*MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814 (W.D. Wash. 2014) ..................... 5

*Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633 (D. Minn. 2000) ............. F-13, F-27, F-40, 3

*QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676 (S.D. Fla. 2012) ....................................... 4

*Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82 (D.D.C. 1998) ............................... 4

*RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399 (8th Cir. 1995) ................................ 1

*Scheetz v. Van Vooren*, Civ. 13-4144-KES,
2017 WL 5633105 (D.S.D. Nov. 21, 2017) ........................................................................ F-26, 2

*Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903 (8th Cir. 1999) .................................... F-7

*Snapp v. United Transp. Union*, 889 F.3d 1088 (9th Cir. 2018) ................................................... 6

*Thomas v. Corwin*, 483 F.3d 516 (8th Cir. 2007) .................................................................... F-45

*Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917 (8th Cir. 2004) ..................... F-25, F-32 to F-38, 6

*United States ex rel. Youn v. Sklar*, 273 F. Supp. 3d 889 (N.D. Ill. 2017) ........................... F-26, 2

*United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996) .......................................................... 4

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) ................................................................................................... *passim*

Fed. R. Civ. P. 37(c)(1) ...................................................................................... F-26, F-29, 2

Fed. R. Civ. P. 56 ........................................................................................................... *passim*

Fed. R. Civ. P. 56(c)(2) ................................................................................... F-32 to F-38, 6

Fed. R. Civ. P. 56(c)(4) ................................................................................... F-32 to F-37, 7

Fed. R. Civ. P. 56(e) ............................................................................................................ F-1

Mo. Rev. Stat. § 434.100.1 ................................................................................................... 7

Case 6:16-cv-03214-SRB   Document 322   Filed 05/06/19   Page 4 of 61

Mo. Rev. Stat. § 434.100.2(8)................................................................................8

W.D. Mo. Local Rule 56.1(b)(2) ...........................................................F-32 to F-37

W.D. Mo. Local Rule 56.1(c) ...............................................................................F-1

8B Charles Alan Wright & Arthur R. Miller,
*Federal Practice & Procedure* § 2289.1 (3d ed. 1998)..........................................F-26

Jay E. Grenig & Jeffrey S. Kinsler,
*Handbook of Fed. Civ. Discovery & Disclosure* § 5:8 (4th ed. July 2018 update) ..................F-41

iv

Defendant ARC Steel, LLC ("ARC"), pursuant W.D. Mo. Local Rule 56.1(c), submits the following reply suggestions in support of its Motion for Summary Judgment.

### Overview of Factual Record

In its suggestions in opposition to ARC's summary judgment motion (Doc. #315) (the "Opposition"), Plaintiff Steadfast Insurance Company ("Steadfast") does not attempt to controvert most of the facts in ARC's Statement of Uncontroverted Material Facts (SUMF). Specifically, Steadfast has admitted that Paragraphs 1-9, 11, 15-26, 29-32, 34-35, 37-38, 40, 42-43, 45-48, 51-55, 58, 61, 64-65, 68-69, and 72-73 of ARC's SUMF are uncontroverted. These facts are deemed admitted for purposes of summary judgment, Fed. R. Civ. P. 56(e); W.D. Mo. L.R. 56.1(b)(1), and need not be discussed in this reply.

With respect to the remaining factual statements in ARC's SUMF, Steadfast either has not properly controverted these statements or the disputes it identifies are not material under the governing law, as explained in Section I below. Similarly, Steadfast's Statement of Additional Facts on pages 37-43 of its Opposition consists of factual statements that are not properly supported, are contrary to the record, or are immaterial to ARC's motion, as more fully detailed in Section II below.

**I.    ARC's Reply to Steadfast's Attempts to Controvert Statements in ARC's Statement of Uncontroverted Material Facts**

10.    Steadfast is a wholly-owned subsidiary of Zurich American Insurance Company ("Zurich"). (**Ex. 4** at 5:13-23, 6:8-13.) Zurich and Steadfast developed the Subguard subcontractor default insurance program in the late 1990s. (*Id.* at 10:24-11:10.)

**Steadfast's Response: Uncontroverted that Steadfast is a wholly-owned subsidiary of Zurich American Insurance Company and that the Subguard subcontractor default insurance program was developed in the late 1990s. The remainder of the paragraph is**

controverted as the material cited does not support the facts asserted. **Mr. Thompson did not testify that Zurich and Steadfast developed the Subguard subcontractor program. [See Exhibit 1, Deposition of Andrew N. Thompson, 10:22–11:6.]**

**ARC's Reply**: ARC accepts Steadfast's limitation on SoF ¶ 10. Thompson testified that the Subguard program was developed in the 1990s but did not specifically identify Zurich and Steadfast as developing it. This limitation on SoF ¶ 10 is immaterial to the issues raised by ARC's motion for summary judgment.


12.     At his deposition as Steadfast's corporate representative pursuant to Rule 30(b)(6), Thompson admitted that in preparation for the deposition, he reviewed documents in Steadfast's claim file but did not consult with any Killian personnel and he had never been to the Westminster Project. (**Ex. 4** at 174:12-175:25.) He also admitted that Steadfast had no first-hand knowledge of any alleged default or deficiency by ARC in its performance as a subcontractor on the Westminster Project: "[T]hat knowledge, I would . . . say lies with Killian." (*Id.* at 176:23-177:12.) Consequently, he admitted, he was unable to provide any factual detail supporting Steadfast's allegations that ARC was liable to Killian under the Subcontract:

**Q. [by Mr. Shank]** So, in other words, if I asked you to specifically in a detailed way tell me what ARC did wrong from your standpoint, you're not able to do that today?

**A.** That's correct.

**Q.** And the best person to do that would be Killian or some representative of Killian, is that your testimony?

**A.** It is.

(*Id.* at 177:13-21.)

**Steadfast's Response:** **Uncontroverted that Andrew Thompson testified that in preparation for his 30(b)(6) deposition he reviewed Steadfast's claim file but did not**

F-2

consult with any Killian personnel, and that Mr. Thompson had not been to the Westminster project. **Uncontroverted that Mr. Thompson testified that Steadfast's knowledge regarding alleged default or deficiency by ARC Steel lies with Killian. The remainder of the paragraph is controverted as the material cited does not support the facts asserted. Mr. Thompson did not testify that he was unable to provide any factual detail supporting Steadfast's allegations that ARC was liable to Killian under the Subcontract; Mr. Thompson testified that on the day of the deposition he was unable to testify specifically in a detailed way what ARC Steel did wrong from his standpoint. [See Exhibit 1, Deposition of Andrew N. Thompson, 177:13–21.]**

**ARC's Reply:** Steadfast's characterization of Mr. Thompson's testimony in the third and fourth sentences of its response is misleading and incorrect. ARC has accurately quoted from Mr. Thompson's deposition. It is clear from Mr. Thompson's testimony that he was not prepared as Steadfast's corporate representative under Rule 30(b)(6) to provide any specific information about the factual basis for the claims asserted by Steadfast against ARC. (*See* Steadfast Exhibit 1, Deposition of Andrew N. Thompson, at 176:1-10, 176:23-177:21.)

13.    Thompson further conceded that he had no factual information to provide to support Steadfast's answer to ARC's interrogatory asking Steadfast to "state and describe with specificity and detail each instance that [ARC's] work had quality issues as alleged" in the Complaint; he acknowledged that any questions seeking such detail "would have to be responded to by Killian." (**Ex. 4** at 182:23-184:3.)

**Steadfast's Response: Controverted. Mr. Thompson did not testify that he had no factual information to provide to support Steadfast's answer to ARC's interrogatory asking Steadfast to "state and describe with specificity and detail each instance that**

[ARC's] work had quality issues as alleged" in the Complaint. [See Exhibit 1, Deposition of Andrew N. Thompson, 183:19–184:3.]

ARC's Reply: Steadfast has mischaracterized Mr. Thompson's deposition testimony. In the passage cited by Steadfast, Mr. Thompson testified as follows:

> Q. (by Mr. Shank): Okay. And I'm going to ask the same question I asked of your earlier, but if I were to go through these [interrogatory answers] and ask you, for example, you know, Interrogatory No. 2, state and describe with specificity and detail each instance that defendant's work had quality issues as alleged in paragraph 12 of [the] petition, I assume your answer would be you don't know, that would be – that would have to be responded to by Killian?
>
> A. That's correct.

(Steadfast's Ex. 1, Thompson Dep., at 183:19-184:3.) This is a concession by Mr. Thompson that he did not have factual information necessary to support Steadfast's interrogatory answer to provide during the deposition.

14.     Thompson confirmed that Steadfast does not contend that ARC caused any construction delays at the Westminster Project; consequently, Steadfast does not seek any delay damages from ARC in this case. (**Ex. 4** at 184:5-14.)

**Steadfast's Response: Controverted. Mr. Thompson testified that Steadfast is not seeking delay damages, not that ARC Steel caused no construction delays on the Westminster Project. [See Exhibit 1, Deposition of Andrew N. Thompson, 184:5–14.] Although Steadfast is not making a claim for delay damages in this case, there were occasions when ARC Steel caused construction delays. [See Exhibit 2, Defendant ARC Steel, LLC's Responses to Plaintiff's First Request for Admissions, ¶ 13, Exhibit 13 thereto.]**

F-4

**ARC's Reply:** The second sentence of Steadfast's response to SoF ¶ 14 is inaccurate. ARC did not admit that it caused construction delays on the project in response to Steadfast's requests for admissions. ARC's response to Request No. 13 of Steadfast's First Request for Admissions (Steadfast's Ex. 2) was **"Deny,"** not "Admit." Furthermore, *none* of the requests in Steadfast's Fourth Request for Admissions (Steadfast's Ex. 13) asked ARC to admit that it caused construction delays.

In any event, the key point of ARC's SoF ¶ 14 is uncontroverted – Steadfast does not seek damages from ARC for alleged delays of the Westminster Project.

27.     As shown by Killian's Application and Certificate for Payment for May 2013 to the Westminster Project's owner, 91% of the structural steel installation work on the Westminster Project was completed by May 31, 2013. (Dep. Ex. 22, attached as **EXHIBIT 9**; **Ex. 2** at 123:20-24, 124:14-126:5.)

**Steadfast's Response: Uncontroverted, however, much of the structural steel installation work turned out to be deficient. [See Exhibit 3, Email from Michael Barbee to James Fowler and Vernon Dugger dated August 16, 2013 and attached Marriott Deviation Log; see also Exhibit 4, Email from Craig Ericson to James Fowler, et al. dated December 11, 2013 and attached .pdf document entitled "Structural Issues Part 3 (003)".]**

**ARC's Reply:** Steadfast's response does not controvert SOF ¶ 27. Steadfast's additional statement in its response that "much of the structural steel installation work turned out to be deficient" is **controverted** by ARC because it is not properly supported and is inaccurate. This additional statement, which relies on Steadfast's Exhibits 3 and 4, is addressed fully in Paragraphs 74 and 75 in Section II, below.

F-5

28.     On June 3, 2013, Killian account executive Brenda Barbee sent an email to Vernon Dugger of Ridge Erection Company ("Ridge Erection"), with copies to Michael Barbee of Killian and Jim Fowler and Janet Johnson of ARC, "to insure that Killian, Arc Steel, and you [Ridge Erection] are all on the same page." (Dep. Ex. 23, attached as **EXHIBIT 10**.) Ms. Barbee confirmed that Killian had agreed to enter into a joint check arrangement with ARC and Ridge Erection for the steel work Ridge Erection was assisting ARC in performing as a "sub-tier" subcontractor of ARC. (*Id.*) She also indicated that Ridge Erection had agreed to remain on the Westminster Project until all of the structural steel work had been completed. (*Id.*)

**Steadfast's Response**: **Uncontroverted that the email was sent. Controverted that Brenda Barbee was an account executive. Ms. Barbee's signature block clearly states that she is an Administrative Assistant. [See Exhibit 10 to ARC's Statement of Uncontroverted Material Facts.] Controverted that all steel work performed by Ridge Erection was as a "sub-tier" subcontractor of ARC. After ARC left the project Killian entered into a subcontract for steel work directly with Ridge Erection. [See Exhibit 5, subcontract between Killian and Ridge Erection.] ARC was not a signatory to this subcontract. [See *id.*]**

**ARC's Reply**: ARC's agrees with Steadfast that Brenda Barbee was an administrative assistant and not an account executive. ARC's SoF ¶ 28 misstated her title.

Also, ARC does not controvert Steadfast's addition to ARC's SoF ¶ 28 that not **all** of Ridge Erection's work on the Westminster Project was performed as a "sub-tier" subcontractor of ARC. Some of Ridge Erection's work was performed as ARC's "sub-tier," and other aspects of Ridge Erection's work was performed under its direct subcontract with Killian (Steadfast's Exhibit 5), which provided for the installation of brick relief angles.

F-6

Steadfast's correction of Ms. Barbee's title and its statement about the separate subcontract between Killian and Ridge Erection do not demonstrate any genuine dispute as to any *material* fact, however.

33.    Killian's application and certificate for payment showed that 100% of the structural steel framing work on the Westminster Project had been completed by July 31, 2013. (**Ex. 2** at 164:19-25; **Ex. 13** at page 2.) By that date, all of the structural steel framing material was on site and in place, and ARC had been paid everything owed under the Subcontract minus retainage. (**Ex. 2** at 165:4-12.)

**Steadfast's Response: Uncontroverted that Killian's application and certificate for payment showed that 100% of the structural steel framing work on the Westminster Project had been completed by July 31, 2013, that by that date, all of the structural steel framing material was on site and in place, and ARC had been paid everything owed under the Subcontract minus retainage. However, there were some defective issues with the structural steel. [See Exhibit 6, Deposition of Kevin Hardy, Volume I, 165:4–9.]**

**ARC's Reply:** Steadfast has not controverted ARC's SoF ¶ 33, and the last sentence of Steadfast's response is merely a conclusory statement made by Hardy that was unsupported by any detail ("unfortunately, there was some defective issues in it"). Such a conclusory statement should not be credited and does not suffice to demonstrate the existence of a genuine dispute as to any material fact. *HM Compounding Servs., LLC v. Express Scripts, Inc.*, 349 F. Supp. 3d 781, 791 (E.D. Mo. 2018) ("general statements in affidavits and depositions are insufficient defeat a properly supported summary judgment motion") (citing *Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903, 909 (8th Cir. 1999)).

But even if this statement were to be credited, it is immaterial. Steadfast is unable to recover for any allegedly "defective issues" in ARC's work under either Paragraph 6 or Paragraph 11 of the Subcontract for the reasons explained below in the Argument section at pages 2-8 below.

36.     After June 2013, ARC continued to provide information and documents that Killian personnel requested for the Westminster Project. At no time after June 2013 did Killian notify ARC that any of its work on the Westminster Project was defective and demand or request that ARC correct any such defective work. (Declaration of James Fowler, attached as **EXHIBIT 15**, ¶ 5.) Killian refrained from sending ARC a notice of termination during 2013 because ARC was continuing to provide materials and information necessary to complete the project. As Hardy testified, "They [ARC] were continuing to assist, yes, at least up and through . . . December 2013." (**Ex. 2** at 281:22-282:4.)

**Steadfast's Response**: **The first sentence of paragraph 36 fails to comply with Rule 56(c)(1)(A) which states that a "party asserting that a fact…cannot be…genuinely disputed must support the assertion by…citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials…." ARC has not cited any such materials in support of the first sentence of paragraph 36.**

**Controverted that at no time after June 2013 did Killian notify ARC that any of its work on the Westminster Project was defective and demand or request that ARC correct any such defective work. On August 16, 2013, James Fowler, president of ARC, was e-mailed a Marriott Deviation Log which set forth steel deficiencies and requested resolution**

regarding the same. [See Exhibit 3, Email from Michael Barbee to James Fowler and Vernon Dugger dated August 16, 2013; see also Exhibit __, Marriott Deviation Log.] On December 11, 2013, Craig Ericson mailed James Fowler, and others, a document entitled "Structural Issues Part (003)" which set forth issues related to ARC's scope of work. [See Exhibit 4.]

Uncontroverted that Killian refrained from sending ARC a notice of termination during 2013 because ARC was continuing to provide materials and information necessary to complete the project, and that ARC was continuing to assist on the project through December 2013.

**ARC's Reply:** ARC unintentionally omitted the following citation to support the first sentence of Paragraph 36: "(Declaration of James Fowler, **Ex. 15**, ¶ 5.)"

Steadfast's attempt to controvert the second sentence of ARC's SoF ¶ 36 is **not properly supported.** *See* Section II ¶¶ 73-74, below.


39.     After receiving Fennell's email, Hardy asked Killian Project Engineer Denise Ericson on April 4, 2014, to "[f]ind all of the notices that Mike [Barbee] sent to Arc Steel" and send them to Hardy for review. (Dep. Ex. 116, attached as **EXHIBIT 19**; **Ex. 2** at 308:18-309:15.) The only notice that was located in response to Hardy's request was the May 30, 2013 Notice to Supplement Forces. (**Ex. 2** at 309:16-21.)

**Steadfast's Response: Uncontroverted that after receiving Mr. Fennell's email, on April 4, 2014, Mr. Hardy asked Killian Project Engineer Denise Ericson to find all notices sent by Mike Barbee to ARC and that the only notice that was located by Ms. Ericson in response to Mr. Hardy's request was the May 30, 2013 Notice to Supplement Forces. Controverted that the May 30, 2013 Notice was the only notice to supplement forces sent by**

Killian to ARC. On April 24, 2013, Adam Estes, then a Project Engineer for Killian, sent Jim Fowler a 72-hour notice to implement enough manpower to complete ARC's scope of work. [See Exhibit 7, Defendant ARC Steel, LLC's Responses to Plaintiff's Third Request for Admissions, ¶ 11 and Exhibit 11 thereto, email from Adam Estes to Jim Fowler dated April 24, 2013.]

ARC's Reply: **Uncontroverted** that Killian Project Engineer Adam Estes sent a 72-hour notice to ARC on April 24, 2013, but this fact is **immaterial**. In response to this notice, ARC's personnel worked "long days" and "worked straight through" the weekend to catch up on ARC's work on the project. (Deposition of James Fowler as ARC's Rule 30(b)(6) corporate representative, attached hereto as **EXHIBIT 29** ("Fowler Dep."), at 190:11-191:10.) After working extra hours and through the weekend, the issue was resolved and Killian took no further action. (*Id.* at 192:20-24 ("I know there was no follow-up [from Killian] on to this. We [ARC] got caught up.").

41.     On May 2, 2014, Killian's risk coordinator Ellie Bodine stated in an email that "[Killian] did not actually default or remove [ARC] from the project. We gave them [ARC] notices of deficiencies and manpower issues." (Dep. Ex. 120, attached as **EXHIBIT 21**; **Ex. 2** at 315:16-316:2.) Hardy agreed that as of May 2, 2014, ARC had not been removed from the Project and Killian had not terminated its Subcontract. (**Ex. 2** at 316:3-7.)

**Steadfast's Response**: **Uncontroverted that on May 2, 2014, Killian's risk coordinator Ellie Bodine stated in an email that Killian did not default or remove ARC from the project and that Killian gave ARC notices of deficiencies and manpower issues. Uncontroverted that Mr. Hardy agreed that as of May 2, 2014, ARC had not been removed from the Project and Killian had not terminated its Subcontract, however, Mr. Hardy did**

F-10

testify that ARC breached the Subcontract and was in default. **[See Exhibit 6, Deposition of Kevin Hardy, Volume I, 119: 15–19; see also Exhibit 9, Deposition of Kevin Hardy Volume II, 316:3–7.]**

**ARC's Reply:** Steadfast's additional statement in its response to SoF ¶ 41 is **immaterial**. Whether ARC had been temporarily in default in its obligations under the Subcontract is not the issue, as it remains uncontroverted that Killian did not terminate ARC's Subcontract in compliance with Paragraph 12 of the Subcontract until June 2014, after the Westminster Marriott Hotel was opened. Indeed, by its failure to respond to ARC's argument concerning Subcontract ¶ 12, Steadfast has effectively conceded that it is not entitled to recover damages from ARC under this provision of the Subcontract.

44.     ARC did not receive any further communication from Killian or Steadfast concerning its alleged breach of the Subcontract until Steadfast filed this action and served ARC with a summons and a copy of the original Complaint on September 1, 2016. (Fowler Declaration, **Ex. 21**, ¶¶ 6-7; *see also* Doc. #8 (Return of Service on ARC).)

**Steadfast's Response: Controverted. The exhibit cited does not support the factual assertion contained in this paragraph. Exhibit 21 is an e-mail from Dale Hendershot to Ellie Bodine dated May 2, 2014 regarding notices of deficiencies and manpower correspondence or emails.**

**ARC's Reply:** In its SoF ¶ 44, ARC inadvertently identified the Declaration of James Fowler by the wrong number -- Exhibit 21 instead of the correct number: **Exhibit 15**.

49.     As Killian's designated corporate representative pursuant to Fed. R. Civ. P. 30(b)(6), Hardy admitted that he could not identify any specific written notices of defective work

F-11

that Killian had sent ARC pursuant to Paragraph 6 of the Subcontract. (**Ex. 2** at 216:18-217:16 [testimony during first day of deposition]; *id.* at 292:15-21, 293:20-296:3 [second day of deposition].) Hardy's deposition was recessed on December 21, 2018 and concluded on January 21, 2019.

**Steadfast's Response**: **Controverted. Mr. Hardy identified the Terracon deficiency report, which identified issues with ARC's work. [See Exhibit 6, Deposition of Kevin Hardy, Volume I, 182:15–24.]**

**Further controverted that as Killian's designated corporate representative pursuant to Fed. R. Civ. P. 30(b)(6), Hardy admitted that he could not identify any specific written notices of defective work that Killian had sent ARC pursuant to Paragraph 6 of the Subcontract. Mr. Hardy testified that change orders were added to Ridge Erection's change orders to correct work done by ARC. [See Exhibit 6, Deposition of Kevin Hardy Volume I, 215:25–216:12.] Further, ARC Steel served a notice to take the deposition of Kevin Hardy and a notice to take the deposition of Killian. [See Notice of Deposition (Kevin Hardy) (Doc. 277); see also Second Amended Notice of Rule 30(b)(6) Deposition of Killian Construction Company (Doc. 266).] ARC Steel did not serve Mr. Hardy with a notice *duces tecum* nor did ARC Steel serve Killian with a notice *duces tecum*. [See Notice of Deposition (Kevin Hardy) (Doc. 277); see also Second Amended Notice of Rule 30(b)(6) Deposition of Killian Construction Company (Doc. 266; see also Exhibit 8, Affidavit of Kevin Hardy, ¶¶ 4–6.)] Although it is routine in construction cases for the interrogating attorney to bring the specific exhibits which the attorney wishes to discuss with the deponent, here, counsel for ARC Steel did not provide Mr. Hardy with a single exhibit related to ARC Steel's Second Amended 30(b)(6) deposition notice or the topics set forth on the notice. [See**

F-12

**Exhibit 9, Deposition of Kevin Hardy Volume II, 343:5–12; see also Exhibit 8, Affidavit of Kevin Hardy, ¶¶ 3, 7-8.]**

**ARC's Reply:** Steadfast's response is misleading, does not controvert SoF ¶ 49, and raises **immaterial** issues. First, Hardy's testimony about the Terracon deficiency report (Hardy Dep., Steadfast **Exhibit 6**, at 182:15-24) does **not** state that Killian notified ARC of any alleged deficiencies in its work. Similarly, Hardy's testimony that change orders were added to Ridge Erection change orders (Hardy Dep. at 215:25-216:12) does **not** state that Killian notified ARC of these change orders so that ARC could correct any alleged deficiencies in compliance with Paragraph 6 of the Subcontract.

Second, Steadfast's statement that ARC did not serve Hardy or Killian with a deposition notice *duces tecum* is immaterial. Steadfast and Killian misconstrue the obligations of Hardy, as Killian's designated representative pursuant to Fed. R. Civ. P. 30(b)(6), to prepare properly for the deposition and to provide responsive information. "Under Rule 30(b)(6), a defendant has an obligations to prepare its designee to be able to give binding answers on its behalf." *Daubert v. NRA Grp., LLC*, 189 F. Supp. 3d 442, 449 (M.D. Pa. 2016), *aff'd*, 861 F.3d 382, 392 (3d Cir. 2017) (quotation omitted). "Although a Rule 30(b)(6) deponent is not required to have personal knowledge of the noticed topics, she has a duty to prepare to speak on those topics, even if the preparation required to do so would be burdensome." *Id.*; *see also Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 639 (D. Minn. 2000) (recognizing that "the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one"). ARC did not serve Killian with a deposition notice *duces tecum* because Killian had already produced many thousands of pages of documents and more than 150,000 emails.

Third, Steadfast's statement that ARC's counsel "did not provide Mr. Hardy with a single exhibit related to ARC Steel's Second Amended 30(b)(6) deposition notice of the topics set forth

F-13

on the notice" is false. ARC's counsel presented Mr. Hardy with approximately 94 exhibits relating to the topics in the Rule 30(b)(6) notice (including Exhibits 41-103 on the first day of the deposition, Exhibits 104-129 on the second day, and Exhibits 153-157 on the third day).

50.     Once the January 21, 2019 date was identified as convenient to Mr. Hardy and all parties, ARC filed a Notice of Continued Deposition (Doc. #289) to confirm that Hardy continued to be obligated to testify on Killian's behalf on the same topics pursuant to Fed. R. Civ. P. 30(b)(6). During the third day of his deposition (1/21/19), Hardy admitted that during the 31 days since his deposition was recessed, he still had not located any notices of defective work that Killian had provided to ARC. (**Ex. 2** at 572:1-573:3.)

**Steadfast's Response**: **Uncontroverted that ARC filed a Notice of Continued Deposition. Controverted that during the third day of the deposition (1/21/19), Hardy admitted that during the 31 days since his deposition was recessed, he still had not located any notices of defective work that Killian had provided to ARC. ARC's Notice of Continued Deposition of Kevin Hardy (Doc. 288), in his individual capacity, was not a *duces tecum* notice. [See ARC's Notice of Continued Deposition (Doc. 288); see also Exhibit 8, Affidavit of Kevin Hardy, ¶¶ 9–10.] ARC's Notice of Continued Deposition of Killian Construction Company (Doc. 289) was not a *duces tecum* notice. [See ARC's Notice of Continued Deposition (Doc. 289); see also Exhibit 8, Affidavit of Kevin Hardy, ¶¶ 9–10.] Counsel for ARC Steel also failed to present Mr. Hardy with any exhibits related to topics set forth in the continued deposition notice. [See Exhibit 9, Deposition of Kevin Hardy Volume II, 343:5–12; see also Exhibit 8, Affidavit of Kevin Hardy, ¶ 11.]**

**ARC's Reply**: Steadfast's additional statements in response to SoF ¶ 50 raise immaterial issues. *See* ARC's Reply regarding SoF ¶ 49, above.

F-14

56.     As Killian's designated corporate representative pursuant to Fed. R. Civ. P. 30(b)(6), Hardy admitted that he could not identify any specific written notices of defective work that Killian had sent ARC pursuant to Paragraph 6 of the Subcontract. (**Ex. 2** at 216:18-217:16 [testimony during first day of deposition]; *id.* at 292:15-21, 293:20-296:3 [second day of deposition].) Hardy's  deposition was recessed on December 21, 2018 and concluded on January 21, 2019.

**Steadfast's Response**: **Controverted. Mr. Hardy identified the Terracon deficiency report, which identified issues with ARC's work. [See Exhibit 6, Deposition of Kevin Hardy, Volume I, 182:15–24.]**

**Further controverted that as Killian's designated corporate representative pursuant to Fed. R. Civ. P. 30(b)(6), Hardy admitted that he could not identify any specific written notices of defective work that Killian had sent ARC pursuant to Paragraph 6 of the Subcontract. Mr. Hardy testified that change orders were added to Ridge Erection's change orders to correct work done by ARC. [See Exhibit 6, Deposition of Kevin Hardy Volume I, 215:25–216:12.] Further, ARC Steel served a notice to take the deposition of Kevin Hardy and a notice to take the deposition of Killian. [See Notice of Deposition (Kevin Hardy) (Doc. 277); see also Second Amended Notice of Rule 30(b)(6) Deposition of Killian Construction Company (Doc. 266).] ARC Steel did not serve Mr. Hardy with a notice *duces tecum* nor did ARC Steel serve Killian with a notice *duces tecum*. [See Notice of Deposition (Kevin Hardy) (Doc. 277); see also Second Amended Notice of Rule 30(b)(6) Deposition of Killian Construction Company (Doc. 266; see also Exhibit 8, Affidavit of Kevin Hardy, ¶¶ 4–6.)] Although it is routine in construction cases for the interrogating attorney to bring the specific exhibits which the attorney wishes to discuss with the deponent, here, counsel for ARC Steel did not provide Mr. Hardy with a single exhibit related to ARC Steel's**

F-15

Second Amended 30(b)(6) deposition notice or the topics set forth on the notice. [See Exhibit 9, Deposition of Kevin Hardy Volume II, 343:5–12; see also Exhibit 8, Affidavit of Kevin Hardy, ¶¶ 3, 7-8.]

**ARC's Reply:** Steadfast's response is misleading, does not actually controvert SoF ¶ 56, and raises **immaterial** issues. *See* ARC's Reply regarding SoF ¶ 49, above.

57.    Once the January 21, 2019 date was identified as convenient to Mr. Hardy and all parties, ARC filed a Notice of Continued Deposition (Doc. #289) to confirm that Hardy continued to be obligated to testify on Killian's behalf on the same topics pursuant to Fed. R. Civ. P. 30(b)(6). During the third day of his deposition (1/21/19), Hardy admitted that during the 31 days since his deposition was recessed, he still had not located any notices of defective work that Killian had provided to ARC. (**Ex. 2** at 572:1-573:3.)

**Steadfast's Response: Uncontroverted that ARC filed a Notice of Continued Deposition. Controverted that during the third day of the deposition (1/21/19), Hardy admitted that during the 31 days since his deposition was recessed, he still had not located any notices of defective work that Killian had provided to ARC. ARC's Notice of Continued Deposition of Kevin Hardy (Doc. 288), in his individual capacity, was not a *duces tecum* notice. [See ARC's Notice of Continued Deposition (Doc. 288); see also Exhibit 8, Affidavit of Kevin Hardy, ¶¶ 9-10.] ARC's Notice of Continued Deposition of Killian Construction Company (Doc. 289) was not a *duces tecum* notice. [See ARC's Notice of Continued Deposition (Doc. 289); see also Exhibit 8, Affidavit of Kevin Hardy, ¶¶ 9–10.] Counsel for ARC Steel also failed to present Mr. Hardy with any exhibits related to topics set forth in the continued deposition notice. [See Exhibit 9, Deposition of Kevin Hardy Volume II, 343:5–12; see also Exhibit 8, Affidavit of Kevin Hardy, ¶ 11.]**

F-16

**ARC's Reply:** Steadfast's response does not actually controvert ARC's SoF ¶ 58. As explained above, the fact that the Rule 30(b)(6) deposition notice of Killian was not a notice *duces tecum* did not relieve Killian of its obligations to produce a knowledgeable witness. *See* ARC's Reply regarding SoF ¶ 49, above.

59.     Hardy admitted at the second day of his deposition that he was not able to identify the specific plans or contract documents that Killian claims ARC violated in connection with installing Stairs 1, 2 and 8 because he did not have those documents in front of him. (**Ex. 2** at 341:6-342:7.) He also admitted that could not respond to the specific topics in ARC's Rule 30(b)(6) deposition notice without such documents, stating "I didn't realize that I was supposed to bring them." (*Id.* at 342:8-343:3.)

Q. **[by Mr. Shank]** So in – in preparation to – to testify as the corporate representative did you realize that you needed specific information to answer the questions that were asked in the notice?

A. No. As I've stated before, I've been through many depositions, and in – most of the depositions that I've been through are all construction related. And if somebody wants me to find something, they show it to me.

Q. So you didn't come prepared to show it to me, right?

A. I did not.

(*Id.* at 343:5-14.)

**Steadfast's Response:** **Uncontroverted that Mr. Hardy admitted at the second day of the deposition that he was not able to identify specific plans or contract documents that ARC violated in connection with installing Stairs 1, 2, and 8 because ARC's counsel did not bring any documents or exhibits specifically related to the topics set forth in ARC's deposition notice. Controverted that Mr. Hardy had any obligation to bring documents to the deposition. ARC Steel served a notice to take the deposition of Kevin Hardy and a**

F-17

**notice to take the deposition of Killian. [Notice of Deposition (Kevin Hardy) (Doc. 277); see also Second Amended Notice of Rule 30(b)(6) Deposition of Killian Construction Company (Doc. 266).] ARC Steel did not serve Mr. Hardy with a notice *duces tecum* nor did ARC Steel serve Killian with a notice *duces tecum*. [See Notice of Deposition Doc. 277), Notice of Deposition (Kevin Hardy); see also Second Amended Notice of Rule 30(b)(6) Deposition of Killian Construction Company (Doc. 266).] Although it is routine in construction cases for the interrogating attorney to bring the specific exhibits which the attorney wishes to discuss with the deponent, here, counsel for ARC Steel did not provide Mr. Hardy with a single exhibit related to ARC Steel's deposition notice or the topics set forth on the notice. [See Exhibit 9, Deposition of Kevin Hardy Volume II, 343:5–12; see also Exhibit 8, Affidavit of Kevin Hardy, ¶ 8.]**

**ARC's Reply:** Steadfast's legal argument "controverting" that Hardy was obligated to testify about any notices of deficient work sent to ARC because he was not required to bring the notices with him to the deposition is without merit, for the reasons explained above. *See* ARC's Reply regarding SoF ¶ 49, above.

60.     During the 31 days between the second day of Hardy's deposition (on December 21, 2018) and the third day (on January 21, 2019), Hardy made no attempt to locate any additional documents that would enable him to testify in response to the topics in ARC's Rule 30(b)(6) notice of deposition. (**Ex. 2** at 572:1-4.) He again admitted that he was unable to provide the specific information requested in the deposition notice without having the specific documents in front of him containing responsive information. (*Id.* at 579:19-581:13.)

**Steadfast's Response:** **Uncontroverted that 31 days elapsed between the second day of Mr. Hardy's deposition (on December 21, 2018) and the third day (on January 21, 2019)**

and that Mr. Hardy did not bring a document with him to the deposition. Controverted that Mr. Hardy had any obligation to bring documents to the deposition. ARC Steel served a notice to take the deposition of Kevin Hardy and a notice to take the deposition of Killian. [Notice of Deposition (Kevin Hardy) (Doc. 277); see also Second Amended Notice of Rule 30(b)(6) Deposition of Killian Construction Company (Doc. 266).] ARC Steel did not serve Mr. Hardy with a notice *duces tecum* nor did ARC Steel serve Killian with a notice *duces tecum*. [See Notice of Deposition (Kevin Hardy) (Doc. 277); see also Second Amended Notice of Rule 30(b)(6) Deposition of Killian Construction Company (Doc. 266); see also Exhibit 8, Affidavit of Kevin Hardy, ¶¶ 4–6.] Although it is routine in construction cases for the interrogating attorney to bring the specific exhibits which the attorney wishes to discuss with the deponent, here, counsel for ARC Steel did not provide Mr. Hardy with a single exhibit related to ARC Steel's deposition notice or the topics set forth on the notice. [See Exhibit 9, Deposition of Kevin Hardy Volume II, 343:5–12; see also Exhibit 8, Affidavit of Kevin Hardy, ¶¶ 6-7.] The reason that it is routine for interrogating counsel to bring exhibits to depositions in construction cases is because construction cases are document intensive. [See Exhibit 8, Affidavit of Kevin Hardy, ¶ 3.]

On January 9, 2019, counsel for ARC filed a notice of continued deposition of Mr. Hardy and a notice of continued deposition of Killian. [See Notice of Continued Deposition (Kevin Hardy) (Doc. 288); see also Notice of Continued Rule 30(b)(6) Deposition of Killian Construction Company (Doc. 289), for January 21, 2019.] During the 31 days between the second and third days of Mr. Hardy's deposition, counsel for ARC appears to have made no attempt to locate or bring exhibits which would have enabled him to question Mr. Hardy in a meaningful fashion. [See Exhibit 8, ¶ 11.]

**ARC's Reply:** Steadfast's legal argument "controverting" that Hardy was obligated to testify about any notices of deficient work sent to ARC because he was not required to bring the notices with him to the deposition is without merit, for the reasons explained above. *See* ARC's Reply regarding SoF ¶ 49, above.

63. Under its Subcontract, ARC was responsible for furnishing certain embeds for the Westminster Project, but it was not responsible for installing them. An embed is any steel piece, such as an anchor bolt or plate, that is set in wet concrete. (**Ex. 2** at 79:5-14.) The subcontractor with responsibility for installing embeds (*i.e.*, metal within wet concrete) was the concrete subcontractor, McClone Construction Company ("McClone"), not ARC. (*Id.* at 77:2-6, 80:2-5, 135:2-8.)

**Steadfast's Response: The first sentence of paragraph 63 fails to comply with Rule 56(c)(1)(A) which requires that a "party asserting that a fact…cannot be…genuinely disputed must support the assertion by…citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials…." ARC has not cited any such materials in support of the first sentence of paragraph 63.**

**The first sentence of paragraph 63 also violates Local Rule 56.1 which states that "[e]ach fact [contained in a concise statement of uncontroverted material facts] must be set forth in a separately numbered paragraph and supported in accordance with Fed. R. Civ. P. 56(c)."**

**Uncontroverted that an embed is anything that is set in wet concrete.**

**ARC's Reply:** The first sentence of SoF ¶ 63 is supported by the citation at the end of the paragraph, which establishes that McClone Construction Company (not ARC) was responsible for installing embeds.

66.    Killian's superintendent on the Project had the authority to accept or reject solutions proposed by ARC prior to installation. (**Ex. 2** at 96:8-97:18.) If Killian had any reservations or concerns before embeds were placed, it should not have allowed the embed placement to go forward. (*Id.* at 97:25-98:6.) Furthermore, if anchor bolts were improperly located when they were installed by the concrete subcontractor (McClone), that deficiency would not be ARC's fault. (*Id.* at 593:19-594:14.)

**Steadfast's Response: Controverted in part that Killian's superintendent had the authority to accept or reject solutions proposed by ARC prior to installation. The structural engineer made the final call on whether or not what a subcontractor proposed was actually installed on the project. [See Exhibit 6, Deposition of Kevin Hardy Volume I, 97:19–24.] Uncontroverted that if Killian had any reservations or concerns before embeds were placed it *would* not have allowed the embed placement to go forward. Uncontroverted that if anchor bolts were improperly located when they were installed by the concrete subcontractor (McClone), that deficiency would not be ARC's fault.**

**ARC's Reply:** ARC accepts Steadfast's qualification of SOF ¶ 66, *i.e.*, that the structural engineer made the final call on whether to accept or reject solutions proposed by ARC before installation. This qualification does not raise any genuine dispute as to a material fact, however.

67.    Minutes of the July 17, 2013 meeting of the owner, architect, and general contractor [Killian] were designated as Dep. Ex. 62 and are attached as **EXHIBIT 24**. (*See* **Ex. 2** at 149:13-21.) Under Item 28-1 on page 2, described as "Brick Detailing & Relief Angles," an

F-21

entry from July 3, 2013 refers to embeds that "were suppose[d] to be placed into the concrete which were never put in." (**Ex. 24** at 2, **Ex. 2** at 150:16-21.) Hardy testified that the costs associated with remedying the failure to install these embeds would have been McClone's responsibility. (**Ex. 2** at 151:2-9.)

**Steadfast's Response**: **Uncontroverted that minutes of the July 17, 2013 meeting of the owner, architect, and Killian was designated as deposition Exhibit 62, that a copy is attached as Exhibit 24, that under Item 28-1 on page 2, described as "Brick Detailing and Relief Angles," an entry from July 3, 2013 refers to embeds that "were suppose[d] to be placed into the concrete which were never put in." Controverted that Hardy testified that the costs associated with remedying the failure to install these embeds would have been McClone's responsibility. Hardy testified that "*if* it was [McClone's] fault…[McClone would have had to have paid for the repair or install the repair, in most cases." [See Exhibit 6, Deposition of Kevin Hardy Volume I, 151:2–6.]**

**ARC's Reply:** Steadfast's response is misleading. Hardy testified clearly that in this case the "fix" was McClone's responsibility:

> **Q.**    Okay. So you would have made the fix McClone's responsibility; correct?
>
> **A.**    Yes.

(Hardy Dep., **Ex. 6**., at 151:7-9.)


70.    The Westminster Project's architect, Jon Mallard, identified in an email dated November 21, 2013 the "structural steel concerns" that he "believed to be the outstanding items." (Dep. Ex. 88, attached as **EXHIBIT 26**, at p. 1.) In item 3 of his list, Mallard indicated that "Stair 8 was installed in alternate of plan details and connections due to the masonry not being installed off center of the beam as detailed." (*Id.*) Hardy testified that if the masonry was not

F-22

properly aligned, that was the fault of the mason; ARC did not have any responsibility for masonry installation on the Project. (**Ex. 2** at 219:11-18.)

**Steadfast's Response**: Uncontroverted that the Westminster Project's architect, Jon Mallard, identified an email dated November 21, 2013, and that the "structural steel concerns" that he "believed to be the outstanding items" that in item 3 of his list, Mallard indicated that "Stair 8 was installed in alternate of plan details and connections due to the masonry not being installed off center of the beam as detailed," and that ARC did not have any responsibility for masonry installation on the Project. Controverted that Hardy testified that if the masonry was not properly aligned, that was the fault of the mason. Mr. Hardy testified that Mr. Mallard could have been inaccurate in his statement and that the masonry was not aligned *could have been* the fault of the mason. [See Exhibit 6, Deposition of Kevin Hardy Volume I, 219:11–15.]

**ARC's Reply:** ARC accepts Steadfast's qualification of Hardy's testimony—*i.e.*, that he testified that if the masonry was aligned improperly, that could have been the fault of the mason. This qualification does not controvert the key point of SoF ¶ 70, which is that ARC did not have any responsibility for masonry installation.

71. In a December 10, 2013 email, Brenda Barbee of Killian indicated that at least 50% of the costs for relief angle installation work performed by Ridge Erection would be submitted to Zurich as a claim against ARC. (Dep. Ex. 92, attached as **EXHIBIT 27**.) Hardy testified, however, that Killian is not pursuing ARC for these costs because, he believes, "the relief angles were paid for by the owner 100 percent." (**Ex. 2** at 226:20-227:9) Hardy's testimony is corroborated by Owner Change Order Number 6, dated November 18, 2013, which indicates that White Etkin paid Killian an additional $10,815.00 for "OCR-083 Change of Brick Relief

F-23

Angle Dimensions" (Item 2), an additional $4,202.00 for "OCR-096 Extra Work - Relief Angle 6x6 & Install at Parapet (not shown on drawings)" (Item 5), and an additional $2,060.00 for "OCR-103 Additional Relief Angle" (Item 12). (**EXHIBIT 28** attached hereto at Killian-Arc 007611, Items 2, 5 & 12.)

**Steadfast's Response**: Uncontroverted that in a December 10, 2013 email, Brenda Barbee of Killian indicated that at least 50% of the costs for relief angle installation work performed by Ridge Erection would be submitted to Zurich as a claim against ARC. Controverted that Mr. Hardy testified that Killian is not pursuing ARC for these costs because, he believes, "the relief angles were paid for by the owner 100 percent." Killian is not a party to this litigation, therefore, it is not pursuing costs against ARC, rather, Steadfast is pursuing costs against ARC. [See Second Amended Complaint (Doc. 52); see also ARC Steel's Answers and Defenses to Plaintiff's Second Amended Complaint (Doc. 62); see also Complaint filed against Schindler (Doc. 84); see also Schindler Elevator Corporation's Amended Answer and Affirmative Defenses to Plaintiff's Complaint and Counterclaim (Doc. 128).] Uncontroverted that Owner Change Number 6, dated November 18, 2013, indicates that White Etkin paid Killian an additional $10,815.00 for "OCR-083 Change of Brick Relief Angle Dimensions" (Item 2), an additional $4,202.00 for "OCR-096 Extra-Work – Relief Angle 6x6 & Install at Parapet (not shown on drawings)" (Item 5), and an additional $2,060.00 for "OCR-103 Additional Relief Angle" (Item 12).

**ARC's Reply**: Steadfast's only attempt to controvert SoF ¶ 71 is its statement that Killian is not pursuing costs against ARC because it is not a party to this litigation. This is sophistry. Steadfast's claims in this action are brought as Killian's subrogee and assignee, and it is only seeking to recover to the extent that it paid on Subguard insurance claims made by Killian.

F-24

## II. ARC's Responses to Steadfast's Statement of Additional Facts

74. On or about August 16, 2013, Michael Barbee, then a Project Executive for Killian, e-mailed a Marriott Deviation Log to James Fowler. [See Exhibit 3, Email from Michael Barbee to James Fowler and Marriott Deviation Log.]

**ARC's Response:** Steadfast's Exhibit 3 is unverified hearsay and should not be considered on summary judgment for several reasons. First, this document is not authenticated or explained by any affidavit, declaration or deposition testimony; it is unverified hearsay that does not satisfy Fed. R. Civ. P. 56. *See, e.g., Banks v. Deere*, 829 F.3d 661, 667-68 (8th Cir. 2016) (holding that unsworn statements did not comply with Rule 56 and were properly disregarded by district court in granting summary judgment); *Mason v. Correctional Med. Servs., Inc.*, 559 F.3d 880, 885 (8th Cir. 2009) ("Mason cannot rely on hearsay to avoid summary judgment) (citing *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923 (8th Cir. 2004)); *Cole v. Strauss*, No. 2:13-cv-04200-NKL, 2014 WL 4055787, at *12 (W.D. Mo. Aug. 15, 2014) (affirming bankruptcy court's refusal to consider, in response to summary judgment motion, document that "was not self-authenticating, nor was it accompanied by an affidavit or excerpt from deposition testimony").

Second, Steadfast argues in its opposition to ARC's motion that this August 16, 2013 email constituted a written notice of "defective work" under Paragraph 6 of the Subcontract, but Steadfast did not identify this notice in its answers to ARC's Second Set of Interrogatories, which asked Steadfast directly to identify any such written notices. (*See* ARC's **Exhibit 5** at 21-22 (Interrogatory No. 7), 25-26 (Interrogatory No. 10).) Furthermore, Steadfast never supplemented its answers to these interrogatories to identify this document. (Declaration of David L. Heinemann ("Heinemann Dec."), attached hereto as **EXHIBIT 30**, ¶ 3.) Under Fed. R. Civ. P. 37(c)(1), because Steadfast failed to provide this information in response to ARC's

interrogatories as required by Rule 26(e), it "is not allowed to use that information . . . to supply evidence on a motion, . . . unless the failure was substantially justified or was harmless." Steadfast has not shown that its failure to disclose this information in its interrogatory answers was substantially justified, and this failure certainly was not harmless, as it prevented ARC from inquiring about this information during deposition discovery, including the Rule 30(b)(6) deposition of Kevin Hardy. Under the circumstances of this case, Steadfast's mere production of this document in a mass of unorganized materials--without identifying the significance of the document in its answers to interrogatories calling for them--is not sufficient. Therefore, this notice should be excluded from the summary judgment record. *See, e.g.*, *Malone v. Ameren AE*, 646 F.3d 512, 515-16 (8th Cir. 2011) (affirming exclusion from summary judgment record of affidavits from witnesses who had not been disclosed in initial or supplemental disclosures); *Scheetz v. Van Vooren*, Civ. 13-4144-KES, 2017 WL 5633105, at *5 (D.S.D. Nov. 21, 2017) ("Under Rule 37(c)(1), exclusion of 'material that should have been provided in discovery responses' is automatic.") (quoting 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2289.1 (3d ed. 1998)); *United States ex rel. Youn v. Sklar*, 273 F. Supp. 3d 889, 900 (N.D. Ill. 2017) (applying Rule 37(c)(1) to exclude information from summary judgment record that party failed to identify in his interrogatory answers).

Third, Steadfast's reliance on this document is inconsistent with the testimony of Killian's Rule 30(b)(6) representative, Kevin Hardy, and would reward Steadfast for the gamesmanship of Killian and its counsel at Mr. Hardy's deposition. During that deposition, ARC's counsel asked Hardy directly whether he knew of any written notices of defective work that Killian had sent to ARC. (ARC's **Exhibit 2**, at 292:10-19.) Hardy testified that he was aware of one or more such notices, but when he offered to stop the deposition to retrieve the document(s) to show to ARC's counsel (*see id.* at 292:24-25 ("Is this -- Nikki, is this where we –

F-26

we bring it in at this point at time?"; *id.* at 294:2-4 ("No, but we can go find one if we need to and give it to you. I wasn't sure how we introduced that into the record."), Killian's counsel (Nikki Hutson) prevented Hardy from doing so (*id.* at 294:5-295:3). She took the position that the document(s) Hardy was referring to was "various e-mails in the Killian e-mails that have already been produced to all the parties in this case pursuant to the judge's order," and that Killian/Hardy had *no* obligation to identify the specific document(s):

> MS. HUTSON: And certainly, your notice today is not a duces tecum request so – and also you guys have all the emails. So to the extent you want us to find something that you already have, I don't think that we need to do your job for you.
>
> . . .
>
> Objection. We've been through this. The parties have a copy of every single e-mail that has been relevant to this project from Killian Construction. Just because there are a significant number of these e-mails, over 20 gig, does not mean that counsel and the witness must produce those.

(*Id.* at 294:11-15, 294:21-295:3.) Hardy then testified that he could not identify any such notice(s) without having the document(s) in front of him that he had offered to introduce, saying only: "It's in the e-mail discovery that you already have." (*Id.* at 295:15-16.)

Killian's counsel's position violates Fed. R. Civ. P. 30(b)(6), which requires an organization's representative to testify about *all* information reasonably available to the organization, and may well require the representative to do a lot of "work" to respond adequately to the inquiries of the party serving the notice. *See, e.g., Prokosch*, 193 F.R.D. at 639 (recognizing that "the burden on the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one," but concluding: "we are not aware of any less onerous means of assuring that the position of a corporation, that is involved in litigation, can be fully and fairly explored"). Simply put, in responding to the Rule 30(b)(6) deposition notice, Killian was not allowed to "take the position that its documents, responses to interrogatories, or other written

F-27

discovery already produced is sufficient." *Dapron v. Spire, Inc. Retirement Plans Comm.*, 319 F.R.D. 223, 226 (E.D. Mo. 2019) (quoting *CitiMortgage, Inc. v. Chicago Bancorp., Inc.*, No. 4:12-CV-00246 CDP, 2013 WL 3946116, at *1 (E.D. Mo. July 31, 2013)).

Killian's counsel (Ms. Hutson) and Steadfast's counsel (Kelvin Fisher) jointly prepared Hardy for his deposition, and they "[l]ooked at quite a few" documents during their eight-hour preparation meeting. (*See* Deposition of Kevin Hardy, attached as **EXHIBIT 31**, 25:12-26:11.) Yet Mr. Fisher remained silent while Ms. Hutson instructed Hardy not to retrieve the document(s) he was willing to produce, and Steadfast never identified Exhibit 3 as a purported notice to ARC until filing its summary judgment Opposition.

Even if the Court considers Steadfast's Exhibit 3 despite Steadfast's violation of Rule 26(e) and Killian's violation of Rule 30(b)(6), the exhibit does not create any genuine dispute of material fact. The exhibit indicates on its face only that on August 16, 2013 Michael Barbee of Killian forwarded a "Deviation Log" from Terracon, the inspector for the Westminster Project, to both Vernon Dugger of Ridge Erection and James Fowler of ARC, stating "I need answered ASAP. This will fall on you guys. Let me know by the end of today." (Steadfast Exhibit 3 at STEADFAST-ARC 001066.) This email on its face does not indicate that Barbee had identified "work rejected by the Contractor and/or the Owner for failing to conform to the Prime Contract" (Subcontract, ARC's **Ex. 1**, ¶ 6) which Killian was asking ARC to remedy. Furthermore, Steadfast fails to provide the full record concerning this Exhibit, as Dugger of Ridge Erection responded to this email on August 19, 2013. (*See* Heinemann Dec., **Ex. 30**, ¶ 4 and Exhibit A attached thereto.) Dugger's August 19, 2013 email indicated that he would be "on sight [sic] today and we can discuss further." (**Ex. 30A**) ARC's counsel has reviewed Killian's email production and has not located any further emails from Barbee, Dugger or Fowler in response to Barbee's August 16, 2019 email or Dugger's August 19, 2019 email. (Heinemann Dec., **Ex. 30**,

F-28

¶ 5.) For all of these reasons, this document does not satisfy Steadfast's burden to establish a genuine dispute of material fact.

75.     On or about December 11, 2013, Craig Ericson, then a Project Manager for Killian, e-mailed a .pdf document entitled "Structural Issues Part 3 (003)" to James Fowler, among others.  [See Exhibit 4, E-mail from Craig Ericson to James Fowler, and others, dated December 11, 2013 and .pdf document entitled "Structural Issues Part 3 (003)"].

**ARC's Reply:** Steadfast's Exhibit 4 is unverified hearsay that should be excluded from the summary judgment record for all of the reasons stated in ARC's Reply to Steadfast's Statement of Additional Facts ("SSAF") No. 74. The Exhibit was not identified in Steadfast's interrogatory answers seeking identification of notices of deficient work provided to ARC (ARC **Ex. 5** (Doc. #206-5)), and Steadfast never supplemented its interrogatory answers to identify this document. (Heinemann Dec., **Ex. 30**, ¶ 3.) Thus, it should be excluded from the summary judgment record pursuant to Rule 37(c)(1). Furthermore, it was not disclosed by Kevin Hardy during the Rule 30(b)(6) deposition of Killian, as detailed above. For all of these reasons, the Court should not consider Steadfast's Exhibit 4.

But even if the Court considers Steadfast's Exhibit 4 despite Steadfast's violation of Rule 26(e) and Killian's violation of Rule 30(b)(6), the document does not demonstrate the existence of any genuine dispute as to a material issue of fact. The document on its face indicates only that Craig Ericson of Killian was sending, as "Part 3 of 3" of the "notes and attachments for the structural issues discussed on Monday and Tuesday of this week," certain Terracon inspection reports. Mr. Ericson sent these attachments to 13 recipients, including Dugger of Ridge Erection and Fowler of ARC. The document does not purport to indicate that Ericson had identified "work rejected by the Contractor and/or the Owner for failing to conform to the Prime Contract"

F-29

(Subcontract, ARC's **Ex. 1**, ¶ 6) which Killian was asking ARC to remedy. For all of these reasons, this document does not satisfy Steadfast's burden to establish a genuine dispute of material fact.

76.     Paragraph 9 of the Subcontract requires ARC to comply with the insurance requirements set forth in Exhibit "F" of the Subcontract. [See Exhibit 11, Subcontract, ¶ 9; see also Exhibit 13, Defendant ARC Steel, LLC's Objections and Responses to Plaintiff's Fourth Request for Admissions, ¶ 1.]

    **ARC's Reply:** **Uncontroverted.**

77.     Exhibit "F" of the Subcontract provided that ARC was to maintain Commercial General Liability insurance [See Exhibit 11, Subcontract, Exhibit "F" thereto; see also Exhibit 13, Defendant ARC Steel, LLC's Objections and Responses to Plaintiff's Fourth Request for Admissions, ¶ 2.]

    **ARC's Reply:** **Uncontroverted.**

78.     Pursuant to Exhibit "F" of the Subcontract, ARC Steel's Commercial General Liability insurance was to include coverage for contractual liability. [See Exhibit 11, Subcontract, Exhibit "F" thereto, see also Exhibit 13, Defendant ARC Steel, LLC's Objections and Responses to Plaintiff's Fourth Request for Admissions, ¶ 3.]

    **ARC's Reply:** **Uncontroverted.**

79.     ARC did not admit or deny whether it complied with the terms of Exhibit "F" of the Subcontract, but rather stated that the request for an admission that ARC complied with the

terms of Exhibit "F" of the Subcontract "improperly calls for a legal conclusion on an ultimate issue in the case." [See Exhibit 13, Defendant ARC Steel, LLC's Objections and Responses to Plaintiff's Fourth Request for Admissions, ¶ 4.]

**ARC's Reply:** **U**ncontroverted that ARC objected to this request in Steadfast's Fourth Request for Admissions.

ARC **controverts**, however, Steadfast's implication that ARC has not admitted that it complied with the terms of Exhibit F to the Subcontract. ARC's corporate representative James Fowler testified at ARC's Rule 30(b)(6) deposition on March 8, 2019 that ARC did in fact "comply in its entirety with the insurance requirements" of the Subcontract. (Fowler Dep., **Ex. 29**, at 236:2-7.) By virtue of this testimony, ARC has admitted that it complied with the terms of Exhibit F, which required ARC to maintain liability insurance including coverage for contractual liability.

80. Pursuant to the Subcontract, ARC was to furnish and install steel stairs for Stair #1, #2, and #8. [See Exhibit 11, Subcontract, Exhibit "G" thereto.]

**ARC's Reply:** **Uncontroverted.**

81. ARC supplied and installed Stairs #1, #2, and #8; however, the Project Architect reported several deficiencies with the stairs in a deviation report from Terracon. [See Exhibit 14, Deviation Report; see also Killian's National Electric Narrative (STEADFAST-ARC 5236–5237, p. 1 of 2)].

**ARC's Reply:** **Uncontroverted** that ARC supplied and installed Stairs #1, #2, and #8.

Steadfast's statement that "the Project Architect reported several deficiencies with the stairs in a deviation report from Terracon" is **not properly supported**, however. The documents

that Steadfast relies on are unverified hearsay and should be excluded from consideration. *See Banks*, 829 F.3d at 667-68; *Mason*, 559 F.3d at 885; *Tuttle*, 377 F.3d at 923; *Cole*, 2014 WL 4055787, at *12. Steadfast's Exhibit 14 reflects that it was reflected the findings of Terracon, not the project architect, which was PFVS. (Deposition of Kevin Hardy, **Ex. _**, at 86:20-23.) And Killian's "National Electric Narrative" (Steadfast's Exhibit 15) is completely unverified, without even an author identified. These documents do not contain any admissible evidence or testimony based on personal knowledge to show that ARC failed in any respect to comply with its obligations under the Subcontract. *See* Fed. R. Civ. P. 56(c)(2), 56(c)(4).

Furthermore, even if ARC did perform work that later was found to be out of compliance with the terms of the Subcontract, Steadfast cannot recover as Killian's assignee because the uncontroverted evidence shows that ARC is not liable to Killian under either Paragraph 6 or Paragraph 11 of the Subcontract. *See* Argument at pages 2-8 below.

82.     Killian directed Ridge Erection to remediate Stairs #1, #2, and #8 to bring them into compliance with the requirements of the Subcontract. [See Exhibit 15, Killian's National Electric Narrative (STEADFAST-ARC 5236–5237, p. 2 of 2)].

**ARC's Reply:  Not properly supported.** This statement violates W.D. Mo. Local Rule 56.1(b)(2) because it is not "properly supported in accordance with Fed. R. Civ. P. 56(c)." The statement is not supported with testimony from an affiant or declarant made on personal knowledge as required by Fed. R. Civ. P. 56(c)(4). Instead, it is unverified hearsay, which is not admissible and cannot be used by Steadfast in response to ARC's summary judgment motion. *See Banks*, 829 F.3d at 667-68; *Mason*, 559 F.3d at 885; *Tuttle*, 377 F.3d at 923; *Cole*, 2014 WL 4055787, at *12. Accordingly, ARC objects to this statement under Fed. R. Civ. 56(c)(2).

Furthermore, Steadfast's statement is immaterial because whether **Ridge Erection** performed work deficiently has no bearing on ***ARC's*** liability. *See* p. 9 below.

83. The remedial stair work (welding) performed by Ridge Erection caused light fixtures lenses to be clouded. [See Exhibit 16, Killian's Nu-Way Narrative (STEADFAST-ARC 5236–5237, p. 2 of 2)].

**ARC's Reply:** **Not properly supported.** This statement violates Local Rule 56.1(b)(2) because it is not "properly supported in accordance with Fed. R. Civ. P. 56(c)." The statement is not supported with testimony from an affiant or declarant made on personal knowledge as required by Rule 56(c)(4). Instead, it is unverified hearsay, which is not admissible and cannot be used by Steadfast in response to ARC's summary judgment motion. *See Banks*, 829 F.3d at 667-68; *Mason*, 559 F.3d at 885; *Tuttle,* 377 F.3d at 923; *Cole*, 2014 WL 4055787, at *12. Accordingly, ARC objects to this statement under Fed. R. Civ. 56(c)(2).

Furthermore, the statement is immaterial because whether ***Ridge Erection*** performed work deficiently or did work that damaged other parts of the Westminster Project has no bearing on ***ARC's*** liability. *See* p. 9 below.

84. Killian directed National Electric to replace the clouded lenses in the stairwells after the stair remediation was complete. [See Exhibit 15, Killian's National Electric Narrative (STEADFAST-ARC 5236–5237, p. 2 of 2)].

**ARC's Reply:** **Not properly supported.** This statement violates Local Rule 56.1(b)(2) because it is not "properly supported in accordance with Fed. R. Civ. P. 56(c)." The statement is not supported with testimony from an affiant or declarant made on personal knowledge as required by Rule 56(c)(4). Instead, it is unverified hearsay, which is not admissible and cannot be

F-33

used by Steadfast in response to ARC's summary judgment motion. *See Banks*, 829 F.3d at 667–68; *Mason*, 559 F.3d at 885; *Tuttle,* 377 F.3d at 923; *Cole*, 2014 WL 4055787, at *12. Accordingly, ARC objects to this statement under Fed. R. Civ. 56(c)(2).

Furthermore, the statement is immaterial because whether Killian directed National Electric to repair work that ***Ridge Erection*** may have performed deficiently has no bearing on ***ARC's*** liability. *See* p. 9 below.

85.     The remedial stair work performed by Ridge Erection caused damage to railings and completed gypsum walls. [See Exhibit 16, Killian's Nu-Way Narrative (STEADFAST-ARC 5236–5237, p. 2 of 4)].

**ARC's Reply:** **Not properly supported.** This statement violates Local Rule 56.1(b)(2) because it is not "properly supported in accordance with Fed. R. Civ. P. 56(c)." The statement is not supported with testimony from an affiant or declarant made on personal knowledge as required by Rule 56(c)(4). Instead, it is unverified hearsay, which is not admissible and cannot be used by Steadfast in response to ARC's summary judgment motion. *See Banks*, 829 F.3d at 667–68; *Mason*, 559 F.3d at 885; *Tuttle,* 377 F.3d at 923; *Cole*, 2014 WL 4055787, at *12. Accordingly, ARC objects to this statement under Fed. R. Civ. 56(c)(2).

Furthermore, the statement is immaterial because whether ***Ridge Erection*** performed work deficiently or did work that damaged the work of others on the Westminster Project has no bearing on ***ARC's*** liability. *See* p. 9 below.

86.     Killian directed Nu-Way to repaint the walls and railings after Ridge Erection brought the stairs into compliance with the Subcontract requirements. [See Exhibit 16, Killian's National Electric Narrative (STEADFAST-ARC 5236 – 5237, p. 2 of 4)].

F-34

**ARC's Reply:  Not properly supported.** This statement violates Local Rule 56.1(b)(2) because it is not "properly supported in accordance with Fed. R. Civ. P. 56(c)." The statement is not supported with testimony from an affiant or declarant made on personal knowledge as required by Rule 56(c)(4). Instead, it is unverified hearsay, which is not admissible and cannot be used by Steadfast in response to ARC's summary judgment motion. *See Banks*, 829 F.3d at 667-68; *Mason*, 559 F.3d at 885; *Tuttle,* 377 F.3d at 923; *Cole*, 2014 WL 4055787, at *12. Accordingly, ARC objects to this statement under Fed. R. Civ. 56(c)(2).

Furthermore, the statement is immaterial because whether Killian directed Nu-Way to repaint walls and railings after work performed by ***Ridge Erection*** has no bearing on ***ARC's*** liability. *See* p. 9 below.


87.     Killian directed M&M Painting to repaint the walls and railings after Ridge Erection brought the stairs into compliance with the Subcontract requirements.   [Exhibit 17, Killian's M&M Painting Narrative (STEADFAST-ARC 003204 – 3208, p. 2 of 5)].

**ARC's Reply:  Not properly supported.** This statement violates Local Rule 56.1(b)(2) because it is not "properly supported in accordance with Fed. R. Civ. P. 56(c)." The statement is not supported with testimony from an affiant or declarant made on personal knowledge as required by Rule 56(c)(4). Instead, it is unverified hearsay, which is not admissible and cannot be used by Steadfast in response to ARC's summary judgment motion. *See Banks*, 829 F.3d at 667-68; *Mason*, 559 F.3d at 885; *Tuttle,* 377 F.3d at 923; *Cole*, 2014 WL 4055787, at *12. Accordingly, ARC objects to this statement under Fed. R. Civ. 56(c)(2).

Furthermore, the statement is immaterial because whether Killian directed M&M Painting to repaint walls and railings after work performed by ***Ridge Erection*** has no bearing on ***ARC's*** liability. *See* p. 9 below.

88.    Killian directed Cleveland Construction, Inc. to replace/repair damaged drywall and patch damaged concrete in the stairwells after the stair remediation was complete. [Exhibit 18, Killian's Cleveland Narrative (STEADFAST-ARC 002555–2559, p. 2 of 5.)]

**ARC's Reply:  Not properly supported.** This statement violates Local Rule 56.1(b)(2) because it is not "properly supported in accordance with Fed. R. Civ. P. 56(c)." The statement is not supported with testimony from an affiant or declarant made on personal knowledge as required by Rule 56(c)(4). Instead, it is unverified hearsay, which is not admissible and cannot be used by Steadfast in response to ARC's summary judgment motion. *See Banks*, 829 F.3d at 667-68; *Mason*, 559 F.3d at 885; *Tuttle,* 377 F.3d at 923; *Cole*, 2014 WL 4055787, at *12. Accordingly, ARC objects to this statement under Fed. R. Civ. 56(c)(2).

Furthermore, the statement is **immaterial** because whether Killian directed Cleveland Construction, Inc. to replace or repair damaged drywall and patch damaged concrete in the stairwells after ***Ridge Erection*** performed work has no bearing on ***ARC's*** liability. *See* p. 9 below.

89.    Concrete cutting and replacement were necessary as part of the steel remediation. [See Exhibit 19, Killian's Diamond Drilling Narrative, STEADFAST-ARC 002706–2714, p. 1 of 9.]

**ARC's Reply: Not properly supported.** This statement violates Local Rule 56.1(b)(2) because it is not "properly supported in accordance with Fed. R. Civ. P. 56(c)." The statement is not supported with testimony from an affiant or declarant made on personal knowledge as required by Rule 56(c)(4). Instead, it is unverified hearsay, which is not admissible and cannot be used by Steadfast in response to ARC's summary judgment motion. *See Banks*, 829 F.3d at 667-

F-36

68; *Mason*, 559 F.3d at 885; *Tuttle,* 377 F.3d at 923; *Cole*, 2014 WL 4055787, at *12. Accordingly, ARC objects to this statement under Fed. R. Civ. 56(c)(2).

Furthermore, the statement is **immaterial** for the reasons explained at p. 9 below.

90.     Killian hired Diamond Drilling & Sawing Co. ("Diamond") to perform necessary concrete cutting and replacement. [See Exhibit 19, Killian's Diamond Drilling Narrative, STEADFAST-ARC 002706–2714, p. 1 of 9.]

**ARC's Reply: Not properly supported.** This statement violates Local Rule 56.1(b)(2) because it is not "properly supported in accordance with Fed. R. Civ. P. 56(c)." The statement is not supported with testimony from an affiant or declarant made on personal knowledge as required by Rule 56(c)(4). Instead, it is unverified hearsay, which is not admissible and cannot be used by Steadfast in response to ARC's summary judgment motion. *See Banks*, 829 F.3d at 667-68; *Mason*, 559 F.3d at 885; *Tuttle,* 377 F.3d at 923; *Cole*, 2014 WL 4055787, at *12. Accordingly, ARC objects to this statement under Fed. R. Civ. 56(c)(2).

Furthermore, the statement is **immaterial** for the reasons explained at p. 9 below.

91.     Dutch's Masonry performed remedial brick work due to nonconforming structural steel. [See Exhibit 20, Dutch's Masonry Conformed Subcontract Narrative.]

**ARC's Reply: Not properly supported.** This statement violates Local Rule 56.1(b)(2) because it is not "properly supported in accordance with Fed. R. Civ. P. 56(c)." The statement is not supported with testimony from an affiant or declarant made on personal knowledge as required by Rule 56(c)(4). Instead, it is unverified hearsay, which is not admissible and cannot be used by Steadfast in response to ARC's summary judgment motion. *See Banks*, 829 F.3d at 667-

Case 6:16-cv-03214-SRB   Document 322   Filed 05/06/19   Page 42 of 61

68; *Mason*, 559 F.3d at 885; *Tuttle,* 377 F.3d at 923; *Cole*, 2014 WL 4055787, at *12. Accordingly, ARC objects to this statement under Fed. R. Civ. 56(c)(2).

Furthermore, the statement is **immaterial** for the reasons explained at p. 9 below.

92.     On January 6, 2017, Steadfast served on ARC the following documents, Bates labeled STEADFAST-ARC 000202 to STEADFAST-ARC 001943 and STEADFAST-ARC 2070 to STEADFAST-ARC 005314.  [See Exhibit 22, Steadfast's First Supplemental Objections and Responses to Defendant's First Requests for Production of Documents and Things, ¶ 2; see also Certificate of Service (Doc. 37).]  Included in the document production addressed in Paragraph No. 104, specifically at STEADFAST-ARC 001066-1076**,** was the August 16, 2013 e-mail from Killian to ARC containing the Marriott Deviation Log mentioned in Paragraphs No. 74-76 above.  [See Exhibit 3, Email from Michael Barbee to James Fowler and Marriott Deviation Log, collectively.]

**ARC's Reply:**  **Uncontroverted, but incomplete.** Steadfast neglects to mention that the August 16, 2013 email (Steadfast Exhibit 3) was addressed to both Vernon Dugger of Ridge Erection and James Fowler of ARC, and that Dugger replied to the email on August 19, 2013. (Heinemann Dec., **Ex. 30**, ¶¶ 3-4 and **Ex. A** attached thereto.)

93.     On May 2, 2018, the Steadfast document production – mentioned in Paragraph No. 92 – which had been previously provided to ARC's prior counsel were provided by Steadfast's counsel to ARC's current counsel, Christopher Shank.  [See Exhibit 22, e-mail from Kelvin J. Fisher to Christopher Shank, dated May 2, 2018.]

**ARC's Reply:**  **Uncontroverted.**

94.     On or about October 15, 2018 ARC received from Killian – in response to ARC's subpoena – project e-mails regarding the subject Marriott project.  [See Exhibit 23, e-mail from Christopher Shank to Tracy Diefenbach et al., dated October 15, 2018.]

**ARC's Reply:  Uncontroverted.**


95.     The project e-mails produced by Killian to ARC, referenced in Paragraph No. 94, contained an email dated December 11, 2013 whereby Killian transmitted to ARC a .pdf document entitled "Structural Issues Part 3 (003)."  [See Exhibit 4.].

**ARC's Reply:   Uncontroverted, but incomplete.** The email in question (Steadfast Exhibit 4) was sent by Craig Ericson to numerous addressees, including both Vernon Dugger of Ridge Erection and James Fowler of ARC. (See Steadfast Ex. 4.) The email did not call for any response from Dugger or Fowler.


96.     Killian – a non-party – has produced in this case over 90,000 pages of documents, as well as over 152,000 e-mails, many of which contained attached files of significant length and in several cases over 100 pages long.  [See Exhibit 8, Affidavit of Kevin Hardy, ¶¶ 12 – 13.]

**ARC's Reply:  Uncontroverted.**


97.     ARC's Amended Notice to Take 30(b)(6) Videotaped Deposition of Killian Construction Company contained multiple, very specific topics, but was not issued *duces tecum*. [See Amended Notice to take 30(b)(6) Videotaped Deposition of Killian Construction Company (Doc. 283), which incorporates by reference the topics listed in Exhibit A of the Second Amended Notice of Deposition of Killian Construction Company (Doc. 266) as well as the

topics set forth in Exhibit A of the Amended 30(b)(6) Notice of Deposition of Killian Construction Company (as limited by the Court's Order of December 17, 2018) (Doc. 282)].

**ARC's Reply:  Uncontroverted, but immaterial.** Steadfast's statement that ARC did not serve Hardy or Killian with a deposition notice *duces tecum* is immaterial. Steadfast misconstrues the obligations of Killian to prepare Hardy, as Killian's designated representative pursuant to Fed. R. Civ. P. 30(b)(6), properly for the deposition to be able to provide responsive information. "Under Rule 30(b)(6), a defendant has an obligations to prepare its designee to be able to give binding answers on its behalf." *Daubert*, 189 F. Supp. 3d at 449. "Although a Rule 30(b)(6) deponent is not required to have personal knowledge of the noticed topics, she has a duty to prepare to speak on those topics, even if the preparation required to do so would be burdensome." *Id.*; *see also Prokosch*, 193 F.R.D. at 639 (recognizing that "the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one"). ARC did not serve Killian with a deposition notice *duces tecum* because Killian had already produced many thousands of pages of documents and more than 150,000 emails.

98.     ARC's 30(b)(6) deposition of Killian – who appeared via witness Kevin Hardy – took place over the course of three days, December 21, 2018, December 22, 2018, and January 21, 2019.  [See *id.*; see also Notice of Continued Rule 30(b)(6) Deposition of Killian Construction Company; *s*ee also Depositions of Kevin Hardy, Volumes I – III.]

**ARC's Reply:  Uncontroverted.**

99.     During the course of ARC's nearly three full-day 30(b)(6) deposition of Killian, ARC never put before Killian's corporate representative witness Kevin Hardy the August 16, 2013 e-mail from Killian to ARC containing the Marriott Deviation Log, Bates labeled STEADFAST-ARC 001066-1076, or the Terracon deficiency log, Bates labeled

Killian00011210 with attached Terracon Report. [See Exhibit 8, Affidavit of Kevin Hardy; instead, ARC's counsel sought to have Mr. Hardy on behalf of Killian cull through 200,000+ pages of records during the deposition to pick out and identify specific e-mails that identified deficiencies sent by Killian to ARC.] [See Exhibit 9, Deposition of Kevin Hardy, Vol. II, 293:1– 296:3; see also Affidavit of Kevin Hardy, ¶¶ 7–8, 10–11.]

**ARC's Reply:** **Uncontroverted** that ARC's counsel did not identify these documents as exhibits during the Rule 30(b)(6) deposition of Killian, as they had never been identified by Steadfast in response to ARC's interrogatories.

ARC **controverts**, however, Steadfast's assertion that its counsel "sought to have Mr. Hardy on behalf of Killian cull through 200,000+ pages of records *during the deposition*." As explained above, it was Killian's and Hardy's responsibility to identify these records prior to the deposition and to be prepared to describe them in response to Topics 3, 4(d)-22(d), and 23(e) of ARC's Rule 30(b)(6) deposition notice of Killian (**ARC Ex. 6**). *See* ARC's Reply regarding SoF ¶ 97 above. During the deposition, Hardy was prepared to retrieve the document(s) that he claimed provided notice to ARC of alleged deficiencies in ARC's work, but he was stopped from doing so by Killian's counsel, who stated that it was not Killian's "job" to do this for ARC, and that ARC should have been able to find any such documents by searching through the more than 200,000 documents produced by Killian. *See* ARC's Reply regarding SoF ¶ 74 above; *see also Buerhle v. City of O'Fallon, Mo.*, No. 4:10CV00509 AGF, 2011 WL 529922, at *3 (E.D. Mo. Feb. 8, 2011) ("'Producing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent.'") (quoting *Great Am. Ins. Co. of N.Y. v. Vegas Const. Co.*, 251 F.R.D. 534, 541 (D. Nev. 2008)); Jay E. Grenig & Jeffrey S. Kinsler, *Handbook of Fed. Civ. Discovery & Disclosure* § 5:8 (4th ed. July 2018 update) ("The purpose

behind [Rule 30(b)(6)] is frustrated where a corporate party produces a witness who is unable or unwilling to provide the necessary information on the corporation's behalf.").

100.    Moreover, when asked about deficiency identification e-mails sent by Killian to ARC, Mr. Hardy specifically testified that Killian had identified such e-mails, that they were in the e-mail discovery Killian had produced subject to ARC's subpoena, and that if ARC wanted Mr. Hardy could stop the deposition and go locate those specific e-mails, but he did not think that was the best interest of the deposition when ARC already had those documents. *Id.*

**ARC's Reply:  Controverted.** Steadfast misrepresents what actually occurred at Hardy's deposition. As outlined above in ARC's reply concerning SoF ¶ 74, Hardy was willing to identify the document(s) at the deposition, but he was prevented from doing so by Killian's counsel Nikki Hutson—not ARC's counsel. (*See* Hardy Dep., **ARC Ex. 2**, at 292:24-25, 294:2-295:3.)

101.    At the 30(b)(6) deposition of ARC – at which James Fowler testified as the corporate representative of ARC – Mr. Fowler admitted that there were several pieces of the work ARC performed in the subject project that were incorrectly done and the fault of ARC. [See Exhibit 24, Deposition of James Fowler, 5:7-17, 6:10-14, 14:20-15:22, 16:2-7, 154:24-155:9, 155:25-157:13, 164:18-166:4 [and] Exs. 158 and 162.]

**ARC's Reply:  Controverted in part and immaterial**.

**Uncontroverted** that James Fowler testified as ARC's corporate representative under Rule 30(b)(6). (Fowler Dep. at 5:7-17, 6:10-14, 14:20-15:22, and 16:2-7.)

ARC **controverts** Steadfast's implication that Fowler testified that ARC performed work incorrectly ***without correcting the work***.

F-42

Although Fowler testified that Item 30 on Dep. Ex. 162 (referenced at 154:24-155:9) related to ARC's work that had to be corrected, his testimony indicates that ARC corrected the deficiency. (Fowler Dep., Steadfast Ex. 24, at 154:23-155:9.)

Similarly, while Fowler testified that the first part of Item 32 on Dep. Ex. 162 (referenced at 155:25-156:5) was ARC's fault, he testified that "we just needed to correct [it], would have been corrected." (*Id.* at 156:1-5.)

Fowler also testified that Items 34 and 35 on Dep. Ex. 162 (referenced at 156:22-157:13) were corrected by ARC. (*Id.* at 157:6-13.)

The only testimony by Fowler concerning alleged work deficiencies that may not have been corrected by ARC is his deposition testimony at 164:18-166:4. This testimony relates to items 95-97 on Dep. Ex. 162. Fowler testified that these items would have been within ARC's scope of work, and he was not asked whether ARC corrected these deficiencies.

But even if ARC performed some work deficiently and failed to correct those items of deficiency, Steadfast has not presented evidence sufficient to demonstrate a disputed issue of material fact supporting Steadfast's right to recover damages from ARC under the Subcontract. For the reasons explained in the Argument section below at 2-8, Steadfast's claims as Killian's subrogee and assignee under Paragraphs 6 and 12 of the Subcontract fail as a matter of law.

102.    Paragraph 11 of the Subcontract contains an Indemnification provision whereby ARC agreed, "[t]o the fullest extent permitted by law, [to] indemnify, hold harmless and defend at its own expense [Killian] and [its] respective agents, employees and assignees (each individually and "Indemnitee") from any claims, causes of action, damages, fines, penalties, losses and expenses (including litigation costs, OSHA fines assessed to [Killian] associated with the work of ARC, and attorney's fees) of any nature whatsoever, including but not limited to

F-43

claims for or relating to…damages to property (including the lost use thereof and consequential damages therefrom), economic loss, liens or Project delays, which arise out of: a) the performance of [ARC's] work; b) the [ARC's] default under this Subcontract Agreement; and/or c) any act or omission of [ARC], its Subcontractors Material Suppliers, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, whether or not such claim, cause of action, damage, loss or expense is caused by the negligence, breach of contract or warranty, strict liability, or any other breach of duty of any Indemnitee; provided however, that [ARC] shall not be obligated to indemnify an Indemnitee for its sole negligence or willful misconduct where such indemnification is contrary to law, but otherwise it is the intent of the parties that [ARC] shall indemnify the indemnit[ees] to the fullest extent permitted by law. [See Exhibit 11, Subcontract, ¶ 11.]

**ARC's Reply: Uncontroverted, but immaterial.**

103. Steadfast's claim against ARC exceeds $1.2 million. [See Exhibit 25, Plaintiff Steadfast Insurance Company's Objections and Answers to Defendant ARC Steel, LLC's Second Interrogatories to Plaintiff, ¶ 2, subpart b.]

**ARC's Reply: Uncontroverted, but immaterial.**

104. Steadfast's claim against ARC relates to the performance of ARC's work as well as acts or omissions of ARC. [See Exhibit 25, Plaintiff Steadfast Insurance Company's Objections and Answers to Defendant ARC Steel, LLC's Second Interrogatories to Plaintiff, ¶¶ 2, subpart a., 3–4, and subparts.]

**ARC's Reply: Uncontroverted, but immaterial**. In opposing summary judgment, Steadfast may not rely on its allegations or interrogatory answers, which are not based on

F-44

personal knowledge as to whether ARC actually was in default under the Subcontract. *See Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) ("mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment").

<u>**Argument and Authorities**</u>

Despite raising a new argument in response to ARC's motion and identifying documents not previously identified in response to ARC's interrogatories and Rule 30(b)(6) deposition notices, Steadfast has not produced evidence sufficient to create any genuine disputes of material fact on its remaining claims for breach of contract, negligence, or negligent misrepresentation. Therefore, the Court should grant ARC's motion for summary judgment in its entirety.

As the nonmoving party facing a properly supported motion for summary judgment, Steadfast must set forth specific facts showing that there is a ***genuine issue*** for trial against ARC. Rule 56 mandates the entry of summary judgment against a party that fails to make a showing of a genuine dispute of material fact sufficient to support an element essential to its claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is genuine only if it has a real basis in the record, and is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247-48. In other words, a genuine dispute of material fact exists only when each of the following conditions is met: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party. *Bland v. O.P. & C.M.I.A.*, No. 12-1401-CV-W-SOW, 2014 WL 12102171, at *2 (W.D. Mo. Feb. 25, 2014) (quoting *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995)).

## I.    The Court Should Grant ARC Summary Judgment on Counts I, IV, and V.

### A.    ARC is not liable to Killian under Paragraph 12 of the Subcontract.

By its failure to respond to Argument Section I.A in the Suggestions in Support of ARC's motion for summary judgment, Steadfast effectively concedes that ARC is not liable to Killian under Paragraph 12 of the Subcontract.

**B.     ARC is not liable to Killian under Paragraph 6 of the Subcontract.**

Steadfast acknowledges, as it must, that for ARC to be liable under Paragraph 6 of the Subcontract for failure to cure deficiencies in its work, it must have been given written notice in writing of the deficiencies and afforded two working days in which to cure the deficiencies. In opposing summary judgment, Steadfast asserts—***for the first time***—that Killian sent ARC notices of deficient work in August 2013 and December 2013.

For the reasons explained in detail in ARC's responses to Steadfast's Statement of Additional Fact ¶¶ 74 and 75, these assertions should not be credited and fail to demonstrate a genuine issue of material fact. First, the documents are unverified hearsay that does not satisfy Rule 56. *See, e.g., Banks v. Deere*, 829 F.3d 661, 667-68 (8th Cir. 2016); *Mason v. Correctional Med. Servs., Inc.*, 559 F.3d 880, 885 (8th Cir. 2009); *Cole v. Strauss*, No. 2:13-cv-04200-NKL, 2014 WL 4055787, at *12 (W.D. Mo. Aug. 15, 2014). Second, the documents should be excluded under Rule 37(c)(1) because Steadfast did not identify them in its interrogatory answers specifically asking it to identify any written notices of deficient work sent to ARC, and Steadfast never supplemented its interrogatory answers to identify these documents. *See, e.g., Malone v. Ameren AE*, 646 F.3d 512, 515-16 (8th Cir. 2011); *Scheetz v. Van Vooren*, Civ. 13-4144-KES, 2017 WL 5633105, at *5 (D.S.D. Nov. 21, 2017); *United States ex rel. Youn v. Sklar*, 273 F. Supp. 3d 889, 900 (N.D. Ill. 2007).

Third, the documents were not identified during the Rule 30(b)(6) deposition of Killian's corporate representative, Kevin Hardy, due to the obstructive conduct of Killian's counsel at that deposition. *See* ARC's response to Steadfast's Statement of Additional Fact ¶¶ 74-75 above. Because (1) Steadfast's Rule 30(b)(6) corporate representative admitted that Steadfast lacked any personal knowledge of facts supporting Steadfast's claims and pointed to Killian as having those facts, and (2) Killian's Rule 30(b)(6) corporate representative admitted at his deposition that he

2

was unable to identify any notices that were sent to ARC, the undisputed record after these depositions—upon which ARC relied in moving for summary judgment--was that **no** such notices were sent.

Fourth, the documents submitted by Steadfast do not, in any event, suffice to demonstrate a genuine dispute of material fact. The August 16, 2013 email sent by Killian to both Vernon Dugger of Ridge Erection and James Fowler of ARC (Steadfast Ex. 3) asked Dugger and Fowler for an "answer[]," which Dugger provided on August 19, 2013. (*See* Declaration of David Heinemann, attached as **Exhibit 30**, and **Exhibit A** attached thereto.) There is no evidence in the record indicating that, by this email, Killian was calling upon ARC to remedy any deficiencies in its work, or that Killian was dissatisfied with Dugger's August 19, 2013 response to this email. The December 11, 2013 email from Craig Ericson (Steadfast Ex. 4) did not even call for any response–it was simply sent to numerous recipients, including Dugger and Fowler, as part of the "notes and attachments for the structural issues discussed on Monday and Tuesday of this week." There is no evidence in the record indicating that Killian expected ARC to do any work on these items within the next two days, as contemplated by Subcontract Paragraph 6.

Steadfast attempts to justify Hardy's failure to identify these documents during the Killian Rule 30(b)(6) deposition on two grounds, both of which are unpersuasive. First, noting that more than 200,000 pages of documents have been produced in this case, Steadfast asserts that it is "not only unfair but improper" for ARC to rely on Hardy's testimony as Killian's Rule 30(b)(6) corporate representative that he was unable to identify any responsive notices. But this assertion ignores the fact that in producing Hardy as its Rule 30(b)(6) representative, Killian was obligated to prepare him to testify fully on the designated topics. *See Prokosch v. Catalina Lightning, Inc.*, 193 F.R.D. 633, 638-39 (D. Minn. 2000). In discharging its duty under Rule 30(b)(6), Killian was obligated to prepare Hardy to testify about any documents that Killian

3

contended to be notices of deficient work sent to ARC pursuant to Paragraph 6 of the Subcontract, even if the burden on Killian to do so was "an onerous one." *Id.* at 639; *see also Daubert v. NRA Grp., LLC*, 189 F. Supp. 3d 442, 459 (E.D. Pa. 2016), *aff'd*, 861 F.3d 382 (3d Cir. 2017). Indeed, Steadfast recognized the importance of Killian's Rule 30(b)(6) deposition testimony to its case, as its counsel Kelvin Fisher participated with Killian's counsel in the eight-hour deposition preparation meeting the day before Hardy's deposition began, and the three of them reviewed "quite a few" documents during this meeting. *See* ARC's response to Steadfast's Statement of Additional Fact ¶ 74 (citing Hardy Dep., attached as **Ex. 31**, 25:12-26:11).

Therefore, it is not unfair to hold Steadfast (as Killian's assignee and subrogee) bound to the testimony of Killian's Rule 30(b)(6) representative. *See, e.g., City of Miami Gardens v. Wells Fargo & Co.*, 328 F. Supp. 3d 1369, 1378-79 (S.D. Fla. 2018) ("'[c]orporation which provides a 30(b)(6) designee who testifies that the corporation does not know the answers to questions will not be allowed to effectively change its answers by introducing evidence at trial'") (quoting *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012)).

> Unless the defendant can "prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition." *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998) . . . . "Were it otherwise, a corporation would be able to deceitfully select at trial the most convenient answer presented by a number of finger-pointing witnesses at the depositions." *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996)).

*Daubert*, 189 F. Supp. 3d at 449; *see also Function Media, L.L.C. v. Google, Inc.*, No. 2:07-CV-279-CE, 2010 WL 276093, at *1 (E.D. Tex. Jan. 15, 2010) ("When the 30(b)(6) representative claims ignorance of a subject during the deposition, courts have precluded the corporation from later introducing evidence on that subject."). Accordingly, "some extraordinary explanation must be required before a corporation is allowed to retreat from binding admissions in the testimony

4

of its Rule 30(b)(6) designee." *Estate of Thompson v. Kawasaki Heavy Indus., Ltd.*, 291 F.R.D. 297, 304 (N.D. Iowa 2013).[1] Steadfast has not provided such an extraordinary explanation here.

Second, Steadfast misrepresents the record by stating that ARC's counsel "shrugged off" Hardy's offer to stop the Rule 30(b)(6) deposition to try to locate responsive documents. Opposition at 48. In fact, it was ***Killian's*** counsel—not ARC's counsel—who objected to stopping the deposition. *See* ARC's response to Steadfast's Statement of Additional Fact ¶ 74 (citing Hardy Dep., ARC's **Ex. 2**, at 292:10-295:16). During the deposition, when Hardy offered to stop the deposition to retrieve a responsive document or documents, Killian's counsel objected, taking the position that Killian and Hardy had no obligation to provide this information:

> MS. HUTSON: And certainly, your notice today is not a duces tecum request so – and also you guys have all the emails. So to the extent you want us to find something that you already have, I don't think that we need to do your job for you.
> . . .
>
> Objection. We've been through this. The parties have a copy of every single e-mail that has been relevant to this project from Killian Construction. Just because there are a significant number of these e-mails, over 20 gig, does not mean that counsel and the witness must produce those.

(*Id.* at 294:11-15, 294:21-295:3.) Hardy then followed his counsel's lead, stating that he could not identify any such notice(s) without having the document(s) in front of him he had offered to get and saying only: "It's in the e-mail discovery that you already have." (*Id.* at 295:15-16.) Because the deposition transcript refutes Steadfast's attempt to pin the blame on ARC's counsel, the Court should reject Steadfast's arguments concerning the Killian Rule 30(b)(6) deposition.

---

[1] *See also MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 829 n.11 (W.D. Wash. 2014) ("a party cannot rebut the testimony of its Rule 30(b)(6) witness when, as here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no adequate explanation for the rebuttal"); *Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 993 (E.D. La. 2000), *aff'd*, 31 F. Appx. 151 (5th Cir. 2001).

Finally, Steadfast has set up a straw man by claiming that ARC is arguing that Hardy's testimony is binding as a judicial admission, rather than an evidentiary admission. Opposition at 48-50. ARC is not making such an argument. Instead, ARC agrees with Steadfast that Rule 30(b)(6) deposition testimony is binding on a corporation "where the purportedly conflicting evidence truly, and without good reason or explanation, is in conflict, *i.e.*, where it cannot be deemed as clarifying or simply providing full context for the Rule 30(b)(6) deposition." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018). That is precisely the situation here.

### C. ARC is not liable to Killian for indemnification under Paragraph 11 of the Subcontract.

Steadfast's Opposition also asserts that ARC is liable for indemnification to Killian pursuant to Paragraph 11 of the Subcontract. Opposition at 50-53. Steadfast appears to acknowledge that Killian is not seeking indemnification for any "liability," but only for a "loss." *Id.* at 51. Yet Steadfast has not produced evidence sufficient under Rule 56 to establish a genuine dispute of material fact as to whether Killian suffered any loss for which ARC is liable to indemnify Killian (or Steadfast, as Killian's assignee).

First, it is unclear what type of "loss" Steadfast claims Killian sustained that would give rise to a duty to indemnify. Steadfast's Opposition does not specifically identify any such "loss," and most of Steadfast's exhibits supporting its Opposition are unverified hearsay, which should be disregarded under Rule 56(c)(2). *See, e.g., Banks*, 829 F.3d at 667-68 (holding that unsworn statements did not comply with Rule 56 and were properly disregarded by court in granting summary judgment); *Mason*, 559 F.3d at 885 ("Mason cannot rely on hearsay to avoid summary judgment) (citing *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923 (8th Cir. 2004)); *Cole*, 2014 WL 4055787, at *12 (affirming bankruptcy court's refusal to consider, in response to summary judgment motion, document that "was not self-authenticating, nor was it accompanied

6

by an affidavit or excerpt from deposition testimony").[2] Steadfast has not presented any testimony from ***anyone*** with personal knowledge, sufficient to comply with Rule 56(c)(4), to establish that Killian suffered any "loss" as a result of any act or omission by ARC. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration sued to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also Allstate Ins. Co. v. Head*, No. 2:17-cv-04169-NKL, 2018 WL 6050880, at *1 n.1 (W.D. Mo. Nov. 19, 2018) (refusing to consider inadmissible evidence in ruling on motion for summary judgment, including statements that were not shown to have been made on personal knowledge and that would be admissible in evidence).

Steadfast also argues that the Missouri anti-indemnity statute, Mo. Rev. Stat. § 434.100.1, does not bar a claim for indemnification under Subcontract ¶ 11 as a matter of law because there is a disputed issue of material fact concerning whether the insurance exception to that statute, Mo. Rev. Stat. § 434.100.2(8), applies. In making this argument, Steadfast has overlooked James Fowler's testimony as ARC's Rule 30(b)(6) representative that ARC did satisfy its obligations under the Subcontract to procure insurance. *See* ARC's response to Steadfast's ASOF ¶ 79 (citing Fowler Dep., attached as **Ex. 29**, at 236:2-7). Thus, there is no genuine dispute about whether ARC obtained insurance.

But this does not mean that Steadfast has satisfied its burden to show that Section 434.100.2(8) applies, because that subsection provides that if the contracting party obtained insurance, then "the party's liability under the indemnity obligation shall be limited to the

---

[2] To the extent that Steadfast claims that costs incurred by Killian to remedy allegedly deficient work by ARC are such a "loss," ARC submits that the specific provision of the Subcontract, Paragraph 6, controls; therefore, Steadfast cannot rely on Paragraph 11 to recover such costs from ARC. But Steadfast has not presented any proper evidence of such losses in any event.

coverage and limits of the required insurance." Steadfast has made no attempt whatsoever to show that the alleged "loss" at issue is actually covered by ARC's insurance policies. Because of Steadfast's complete failure of proof on this issue, its argument based on Mo. Rev. Stat. § 434.100.2(8) should be rejected.

Steadfast's assertions that its claim exceeds $1.2 million and relates to the performance of ARC's work and ARC's acts or omissions (Opposition at 52) do nothing to establish that *Killian* sustained a compensable loss giving rise to a right of indemnity. And Steadfast has misconstrued ARC's argument that the economic loss doctrine bars Steadfast's tort-based claims as a matter of Missouri law. Contrary to Steadfast's statement (Opposition at 53), ARC has not conceded that Killian actually sustained economic loss for which ARC is liable; rather, ARC simply argued that any such losses, *if proven*, can only be shifted to ARC under the terms of the Subcontract, and not through claims for negligence or negligent misrepresentation.

For all of these reasons, Steadfast's reliance on Paragraph 11 of the Subcontract should be rejected, and summary judgment should be granted to ARC on Steadfast's claim for breach of contract in Count I of its Complaint.

**D.** **Steadfast has abandoned its claims for equitable subrogation and equitable contribution.**

Summary judgment should be granted on Steadfast's claims for equitable subrogation in Counts IV and V of the Complaint, as Steadfast has abandoned these claims in response to ARC's motion.

**II.** **The Court Should Grant ARC Summary Judgment on Counts II, III and VI.**

**A.** **Steadfast's claims of negligence and negligent misrepresentation in Counts II and III fail as a matter of law.**

Steadfast does not dispute that the economic loss doctrine under Missouri law would bar its claims for negligence and negligent misrepresentation in Counts II and III of its Complaint,

8

but Steadfast asserts that the economic loss doctrine does not apply "[w]here damage is claimed to property other than the product sold." Opposition at 54. Assuming for sake of argument that this exception applies to ARC's subcontract to furnish and install structural steel,[3] Steadfast has not presented evidence that ARC damaged property other than the steel it installed in the Westminster Project. All of the Additional Statements of Material Fact referenced in Steadfast's argument to support this point (ASOF ¶¶ 82-91) are supported only by unverified hearsay, which is not proper evidence to defeat summary judgment. *See* Argument at pages 2 and 6-7 above. Furthermore, most of these statements refer to work done by Ridge Erection that allegedly caused damage to other property. Steadfast does not explain how **ARC** is liable for negligence or negligent misrepresentation based on mistakes that **Ridge Erection** allegedly made.

Accordingly, Steadfast's claims for negligence and negligent misrepresentation are barred by the economic loss doctrine. And even if the economic loss doctrine does not apply, Steadfast has not presented evidence sufficient to demonstrate a genuine dispute of material fact supporting its claims that ARC is liable to it (as Killian's assignee) for negligence or negligent misrepresentation. Summary judgment should be granted to ARC on these claims.

### B.    Steadfast has abandoned its claim for unjust enrichment.

Steadfast has abandoned its claim for unjust enrichment in Count VI (Opposition at 53); therefore, the Court should grant summary judgment for ARC on this Count.

---

[3] Neither case cited by Steadfast was a construction case. *Laidlaw Waste Systems, Inc. v. Mallinckrodt, Inc.*, 925 F. Supp. 2d 624 (E.D. Mo. 1996), was an environmental case in which the plaintiffs operated a landfill and alleged that the defendants sent waste to the landfill that—contrary to their representations—was hazardous. *Id.* at 628. Because the plaintiffs alleged that the defendants' hazardous waste caused permanent damage to the plaintiffs' real property, the court denied the defendants' motion to dismiss claims for negligence and negligent misrepresentation under the economic loss doctrine. *Id.* at 636. Steadfast's other case, *Clayton Center Associates v. W.R. Grace & Co.*, 861 S.W.2d 686 (Mo. Ct. App. 1993), was an asbestos case where the plaintiffs presented evidence that the defendant's fireproofing product released asbestos, which caused damage to the plaintiff's building and its contents. *Id.* at 692.

**III.    Alternatively, ARC is Entitled to Partial Summary Judgment on Several Aspects of Steadfast's Claims.**

Steadfast claims that the amounts Killian paid Hendershot Consulting and Killian's labor costs in preparing its Subguard claim to Steadfast are covered by the Subcontract. But the Subcontract only provides for reimbursement of costs and expenses incurred in enforcing Killian's rights ***under the Subcontract***, not the costs incurred in submitting a claim to its insurance company, Steadfast. ARC did not agree to reimburse Killian's costs for filing an insurance claim.

Steadfast also ignores the undisputed evidence in the record that ARC was not responsible for installing embeds (SoF ¶¶ 63-64) and is not liable for the costs of work that had to be redone due to missing embeds (SoF ¶¶ 65-68). Steadfast asserts that ARC should be liable for the "expenses incurred in obtaining [replacement] embeds" (Opposition at 57), but such relatively minor expenses have not been identified by Steadfast as at issue in this case.

<u>Conclusion</u>

For the foregoing reasons, the Court should grant ARC's motion for summary judgment and enter judgment in ARC's favor on Steadfast's claims.

Respectfully submitted,

SHANK & MOORE, LLC

By:  /s/ David L. Heinemann
    Christopher S. Shank     MO Bar #28760
    David L. Heinemann    MO Bar #37622
    1968 Shawnee Mission Parkway, Suite 100
    Mission Woods, KS 66205
    Telephone:  816.471.0909
    Facsimile:   816.471.3888
    chris@shankmoore.com
    davidh@shankmoore.com

*Attorneys for Defendant ARC Steel, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was electronically filed with the United States District Court using the CM/ECF system which sent notification of such filing on this 6th day of May, 2019, to:

Michael L. Brown
Kelvin J. Fisher
Wallace Saunders, P.C.
10111 West 87th Street
Overland Park, KS 66212
mbrown@wallacesaunders.com
kfisher@wallacesaunders.com
**Attorneys for Plaintiff Steadfast Insurance Company**

Paul L. Wickens
James Maloney
Michael L. Belancio
Foland, Wickens, Eisfelder,
Roper & Hofer, P.C.
1200 Main Street, Suite 2200
Kansas City, MO 64105
pwickens@fwpclaw.com
jmaloney@fwpclaw.com
mbelancio@fwpclaw.com
**Attorneys for Defendant Schindler Elevator Corporation**

    /s/ David L. Heinemann
    Attorney for Defendant ARC Steel, LLC

11