# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| STEADFAST INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-3214-CV-S-SRB |
| | ) | |
| ARC STEEL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant ARC Steel, LLC's Motion for Summary Judgment. (Doc. #305). For the following reasons, the motion is granted in part and denied in part.

**I.  Background**

The following facts are uncontroverted. Plaintiff Steadfast Insurance Company insured Killian Construction Co. ("Killian") while Killian was the general contractor for a hotel building project in Colorado. (Doc. #315, p. 6). Under Killian's insurance policy, Plaintiff insured Killian "against loss resulting from defaults of performance by subcontractors or suppliers." (Doc. #315, pp. 7–8). On June 20, 2012, Killian entered into a subcontract with Defendant ARC Steel, LLC ("ARC") under which Defendant agreed "to furnish and install structural steel, miscellaneous steel, and associated labor" for the building project. (Doc. #315, p. 6; Doc. #52-1). On May 30, 2013, Killian sent Defendant a "Notice to Supplement Forces," directing Defendant to "immediately appear and continue the remainder of [its] scope of work to complete its contract in entirety . . . . no later than 12:00PM, Monday June 3, 2013 with sufficient manpower . . . ." (Doc. #315, p. 14; Doc. #306-7, p. 3). At this time, "Killian was contemplating filing claims" on its insurance policy "against ARC." (Doc. #315, p. 14). On February 28, 2014,

Killian submitted a claim on its "insurance policy issued by [Plaintiff], asserting that ARC had defaulted under its Subcontract and that Killian was entitled to compensation." (Doc. #315, p. 20). Plaintiff alleges that it paid "at least $989,055 to Killian" for the costs of completing or remediating Defendant's work. (Doc. #52, ¶ 24).

Plaintiff brings this case as Killian's assignee and subrogee. In its Second Amended Complaint, Plaintiff brings claims against Defendant for Breach of Contract (Count I), Negligence (Count II), Negligent Misrepresentation (Count III), Equitable Subrogation (Count IV), Equitable Contribution (Count V), and Unjust Enrichment (Count VI). Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). (Doc. #305). Defendant argues: 1) it is entitled to summary judgment on Counts I, IV, and V because it is not liable to Killian under the subcontract; 2) Counts II, III, and VI fail as a matter of law; and 3) even if Defendant is not entitled to full summary judgment, it is entitled to partial summary judgment on several aspects of Plaintiff's claims. (Doc. #306). In its opposing suggestions, Plaintiff "abandons its claims for equitable subrogation [(Count IV)], equitable contribution [(Count V)], and unjust enrichment [(Count VI)]." (Doc. #315, p. 57). The Court therefore grants summary judgment to Defendant on Counts IV–VI. From here, this Order will address only Counts I–III.

## II. Legal Standard

Rule 56(a) requires a court to grant a motion for summary judgment if 1) the moving party "shows that there is no genuine dispute of material fact" and 2) the moving party is "entitled to judgment as a matter of law." A nonmoving party survives a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, is "such that a reasonable jury could return a verdict for the nonmoving party." *Stuart C. Irby Co. v. Tipton*,

796 F.3d 918, 922 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  While a plaintiff opposing summary judgment "may not simply point to allegations in the complaint," *Robbins v. Becker*, 794 F.3d 988, 993 (8th Cir. 2015) (internal quotation marks and citation omitted), the "standard for avoiding summary judgment" is "relatively lenient." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 479–80 (2013) (citing *Anderson*, 477 U.S. at 248).  The purpose of summary judgment "is not to cut litigants off from their right of trial by jury if they really have issues to try." *Hughes v. Am. Jawa, Ltd.*, 529 F.2d 21, 23 (8th Cir. 1976) (internal quotation marks omitted) (quoting *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467 (1962))

### III. Discussion

#### A. Count I (Breach of Contract)

Under Missouri law,[1] "[a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 850 (8th Cir. 2014) (internal quotation marks omitted) (quoting *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010)).  Defendant argues it is entitled to summary judgment on Count I because "the undisputed facts demonstrate that ARC is not liable to Killian under the

---

[1] Paragraph 16 of the subcontract states "**Governing Law: Venue.** This Subcontract Agreement and the rights and duties of all persons arising from or related to this Subcontract Agreement shall be governed by the laws of the State of Missouri." (Doc. #52-1, ¶ 16) (emphasis in original).  The Court construes this paragraph as a choice-of-law provision rather than a forum-selection clause.  In light of this choice of law provision, which neither party challenges, the Court will apply Missouri law in its analysis of Plaintiffs' claims for purposes of this motion. *See Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 567–68 (8th Cir. 1982) (holding that the choice of law rules "of the forum state control which substantive law should apply" and applying forum state's law to determine the validity and enforceability of a contractual choice-of-law provision); *State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 600 (Mo. banc 2012) (holding that "[g]enerally, parties may choose the state whose law will govern the interpretation of their contractual rights and duties" and that "[a] valid choice-of-law provision in a contract binds the parties").

Subcontract." (Doc. #306, p. 32). Plaintiff argues that summary judgment is improper because the parties genuinely dispute whether Defendant breached the subcontract. While the parties' arguments address several provisions in the subcontract, they focus much of their attention on paragraph 6, which states the following:

> **Correction of Defective Work/Right to Stop Work.** [Defendant] shall promptly correct its work rejected by [Killian] . . . for failure to conform to the Prime Contract. If [Defendant] fails to cure the rejected work, or satisfy any defects or deficiencies in its performance of this Subcontract Agreement . . . within two (2) working days after receipt of [Killian's] written notice of such rejection or deficiency, then [Killian] . . . shall have the right to reserve or withhold payment, terminate this Subcontract Agreement and/or take whatever steps it deems necessary to correct said deficiencies and charge the cost thereof to [Defendant] . . .

(Doc. #52-1, ¶ 6) (emphasis in original).

Viewed in the light most favorable to Plaintiff, the evidence is such that a reasonable jury could find for Plaintiff on Count I. If Defendant received written notice of rejected or deficient work and failed to cure the rejected work or deficiency within two business days, then Defendant breached the subcontract. Defendant argues that it did not breach paragraph 6 because Defendant "remedied every deficiency on the Westminster Project about which Killian or inspectors notified ARC and asked it to remedy" and "after June 2013, Killian never sent ARC written notices of rejection or deficiency providing ARC with an opportunity to cure the allegedly defective work." (Doc. #306, pp. 22, 34). Plaintiff disagrees, stating that in August and December of 2013 Killian "provided" Defendant with emails and "deviation log[s]" containing "deficiencies, including deficiencies with ARC's work," and that Defendant "only had employees working on the project until June 23, 2013." (Doc. #315, p. 29). Plaintiff argues that Defendant "has presented no evidence demonstrating that these deficiencies were cured within two (2) working days" as paragraph 6 requires. (Doc. #315, p. 50). Plaintiff has provided

4

evidence of written notice and failure to cure sufficient to create a genuine issue for trial on Count I.² A genuine dispute of material fact exists as to whether conduct constituting breach of the subcontract occurred,³ and therefore Defendant is not entitled to summary judgment on Count I.

### B. Count II (Negligence)

Under Missouri law, "negligence actions have three elements in common: 1) that a duty existed on the part of the defendant to protect the plaintiff from injury; 2) that the defendant failed to perform the duty; and 3) that the defendant's failure proximately caused the plaintiff's injury." *Berliner v. Milwaukee Elec. Tool Corp.*, 501 S.W.3d 59, 64 (Mo. Ct. App. 2016) (citing *Carman v. Wieland,* 406 S.W.3d 70, 76 (Mo. Ct. App. 2013)). "The existence of duty is a threshold matter . . . and is purely a question of law." *Berliner v. Milwaukee Elec. Tool Corp.*, 501 S.W.3d 59, 64 (Mo. Ct. App. 2016) (citing *Carman*, 406 S.W.3d at 76; *Hoffman v. Union Elec. Co.,* 176 S.W.3d 706, 708 (Mo. banc 2005)). "Generally, the standard of negligence is the requirement that the actor use ordinary care and skill," and a "duty to use ordinary care and skill" can arise when "an interest entitled to protection will be damaged if such care is not exercised."

---

² Defendant argues that that Plaintiff cannot rely on these emails and deviation logs, (Doc. #315-3 and #315-4), to avoid summary judgment because 1) "the documents are unverified hearsay that does not satisfy Rule 56"; 2) "the documents should be excluded under Rule 37(c)(1) because [Plaintiff] did not identify them in its interrogatory answers" and "never supplemented its interrogatory answers to identify these documents"; and 3) "the documents were not identified during the Rule 30(b)(6) deposition of Killian's corporate representative." (Doc. #322, p. 52). This Court disagrees. First, Plaintiff is allowed to support his assertion by "citing to . . . documents" and "electronically stored information," and Defendant does not argue that the material Plaintiff cites "*cannot* be presented in a form that would be admissible in evidence" at trial. *See* Fed. R. Civ. P. 56(c)(2) (emphasis added). Second, Plaintiff states that these documents were "produced in discovery to ARC before ARC filed its subject Motion," some of them being produced "over two years ago" and the rest produced "nearly five months before ARC filed its subject Motion." (Doc. #315, p. 51). Third, "[a] 30(b)(6) witness's legal conclusions are not binding on the party who designated him." *S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*, 731 F.3d 799, 811–12 (8th Cir. 2013) (citing *AstenJohnson, Inc. v. Columbia Cas. Co.,* 562 F.3d 213, 229 n.9 (3d Cir. 2009)).
³ While this Order addresses paragraph 6 of the subcontract in particular, this does not preclude a finding at trial that Defendant breached other provisions in the subcontract.

*Crowder v. Vandendeale*, 564 S.W.2d 879, 882 (Mo. banc 1978). Property interests have "generally been found to merit protection from physical harm." *Id.*

"The economic loss doctrine prohibits a commercial buyer of goods from seeking to recover in tort for economic losses that are contractual in nature." *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905–06 (8th Cir. 2013) (internal citations omitted). "Recovery in tort is limited to cases in which there has been personal injury, or property damage either to property other than the property sold, or to the property sold when it is rendered useless by some violent occurrence." *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198–99 (8th Cir. 1995) (internal citations omitted). "In essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." *Dannix Painting, LLC*, 732 F.3d at 906. However, "[w]here the parties have entered into a contract, our common law has imposed the duty to perform with skill, care, and reasonable expedience and faithfulness in regard to the thing to be done or accomplished within the contract. The negligent failure to observe and perform any portion of that duty gives rise to an action in tort as well as an action for breach of contract." *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 193 (Mo. Ct. App. 2010) (quoting *Am. Mortg. Inv. Co. v. Hardin-Stockton Corp.*, 671 S.W.2d 283, 293 (Mo. Ct. App. 1984)).

Defendant argues that the economic loss doctrine bars Counts II and III because that doctrine "prohibits a party from seeking to recover in tort for economic losses that are contractual in nature" and Counts II and III are "based on assertions that ARC violated the terms of the Subcontract with Killian." (Doc. #306, pp. 36–39). Defendant argues that even if the economic loss doctrine does not apply to Count II or III, Plaintiff "has not presented evidence

sufficient to demonstrate a genuine dispute of material fact supporting its claims that ARC is liable to it (as Killian's assignee) for negligence or negligent misrepresentation." (Doc. #322, p. 59). Plaintiff argues the economic loss doctrine does not bar Count II or Count III because "ARC's work caused damage to the work of other contractors and subcontractors." (Doc. #315, pp. 57–59).

Summary judgment is not appropriate on Count II. First, the economic loss doctrine does not bar Count II. While goods in the form of steel are part of the subcontract, the focus of the subcontract is Defendant's obligation to properly install this steel and the labor required for this instillation. The subcontract is one primarily for services, not primarily for the sale or lease of goods. *See MEA Fin. Enterprises, LLC v. Fiserv Sols., Inc.*, No. 13-05041-CV-SW-BP, 2013 WL 12155467, at *3 (W.D. Mo. Oct. 16, 2013) ("Because this case involves a contract for services that does not fall under the UCC, the public policy reasons for applying the economic loss doctrine to product defect claims are not applicable here."); *Heartland Med., LLC v. Express Scripts, Inc.*, No. 4:17-CV-02873 JAR, 2018 WL 4216669, at *2 (E.D. Mo. Sept. 5, 2018) (collecting cases) ("[D]istrict courts in Missouri have noted that the economic loss doctrine originated in cases arising under the Uniform Commercial Code ("UCC"), making it inapplicable to contracts for services like the one at issue in this case."). Moreover, Plaintiff's negligence claim is based on the alleged manner in which Defendant installed the steel and the damage this conduct caused, not any defective condition of the steel itself.

Second, Plaintiff provides sufficient evidence to create a genuine dispute of material fact as to whether Defendant breached a duty of care it owed to Plaintiff and thereby caused "delay damages" and "damages to work completed by other contractors and subcontract[ors]." (Doc. #52, ¶¶ 40–43). Under Missouri law, contractors can owe a duty of care for their work on a

building project independent of their obligations under a given contract. *See Newell Rubbermaid, Inc. v. Efficient Solutions, Inc.*, 252 S.W.3d 164, 176 (Mo. Ct. App. 2007) (holding that in breach of contract and negligence action contractor had duty of care when installing high-intensity light fixtures at factory). The Court sees no reason why this principle cannot apply to subcontractors in addition to contractors. Plaintiff's evidence, viewed in the light most favorable to Plaintiff, shows that Defendant owed Killian a duty of care to complete its work in a way that would not cause damage to the building project or the work of other subcontractors or contractors in the building project. Plaintiff has provided evidence from which a reasonable jury could find that Defendant's conduct breached that duty and caused damage to the work that other contractors and subcontractors were completing as part of the building project. (*See* Doc. #322, pp. 36–42). Defendant is not entitled to summary judgment on Count II.

### C. Count III (Negligent Misrepresentation)

In its Second Amended Complaint, Plaintiff alleges that Defendant "represented to Killian that it would perform the ARC Contracted work," that "its work would not cause damage to the work of other subcontractors and contractors," and that "[b]ecause of [Defendant's] failure to exercise reasonable care, [Defendant's] Representations were false." (Doc. #52, ¶¶ 46–48). Defendant argues that "even if the economic loss doctrine does not apply, [Plaintiff] has not presented evidence sufficient to demonstrate a genuine dispute of material fact supporting its claim[] that [Defendant] is liable to it (as Killian's assignee) for . . . negligent misrepresentation." (Doc. #322, p. 59). Plaintiff makes legal arguments supporting its position that the economic loss doctrine does not bar its negligent misrepresentation claim. (Doc. #315, pp. 57–59). Plaintiff does not appear to support its negligent misrepresentation claim with any evidence beyond that which it used to support its negligence claim. (*See* Doc. #315, pp. 58–59).

Even if the economic loss doctrine did not bar Count III, Plaintiff has not provided evidence sufficient to create a genuine dispute of material fact that conduct by Defendant constituting negligent misrepresentation occurred. Plaintiff points to a provision in the subcontract where Defendant agreed to furnish and install certain steel stairs, which the parties do not dispute, and argues that the architect for the building project "reported several deficiencies with the stairs." (Doc. #315, p. 58; Doc. #322, p. 36). Plaintiff, however, does not explain what specific evidence shows a statement or information that constitutes the alleged representation, who made the statement or gave the information, when it was made or given, or how Defendant "failed to exercise reasonable care or competence to obtain or communicate true information." *See CADCO, Inc. v. Fleetwood Enterprises, Inc.*, 220 S.W.3d 426, 438 (Mo. Ct. App. 2007) (citing *Jim Lynch Cadillac, Inc. v. Nissan Motor Acceptance Corp.*, 896 S.W.2d 704, 707 (Mo. Ct. App. 1995) (stating elements of negligent misrepresentation claim under Missouri law). Plaintiff does not go sufficiently beyond "point[ing] to allegations in the complaint" to support its negligent misrepresentation claim. *Robbins*, 794 F.3d at 993 (internal quotation marks and citation omitted). Defendant is entitled to summary judgment on Count III.

### D. Partial Summary Judgment

Defendant also moves for partial summary judgment on several aspects of Plaintiff's claims. First, Defendant argues that it "is not liable to [Plaintiff] for the $301,589.50 that [Plaintiff] allegedly paid to Killian to reimburse it for payments to Hendershot Consulting" for assistance "in preparing the proofs of loss and other documents it submitted" on its insurance claim. (Doc. #306, p. 40). Defendant is not entitled to partial summary judgment on this aspect of Plaintiff's claim. Paragraph 20 of the subcontract provides that if Defendant breaches the subcontract it "shall pay *any and all costs and expenses incurred by* [Killian] in enforcing or

establishing its rights hereunder, including without limitation, court costs and reasonable attorneys' fees." (Doc. #52-1, ¶ 20) (emphasis added). As discussed above, Plaintiff has provided sufficient evidence from which a reasonable jury could find that Defendant breached the subcontract. The plain meaning of paragraph 20 includes the costs Killian incurred by paying Hendershot Consulting to prepare its insurance claim in order to "establish its rights" under the subcontract. Defendant is not entitled to judgment as a matter of law on this aspect of Plaintiff's claims, and therefore partial summary judgment on this aspect is denied. Second, Defendant argues it is not liable for "Killian's documented labor costs to develop, administer, and manage Killian's proof of loss submissions" for its insurance claim. (Doc. #306, p. 40). For the same reason that Defendant is not entitled to partial summary judgment on the consulting fees, it is not entitled to partial summary judgment on these labor costs.

Third, Defendant argues it is entitled to partial summary judgment "for any claim by [Plaintiff] based on missing or improperly installed embeds" because "[t]he undisputed facts . . . demonstrate that ARC was not responsible for installing embeds and that any expenses resulting from improperly installed embeds or missing embeds are not expenses for which ARC can be held liable." (Doc. #306, p. 41). The subcontract required Defendant to supply certain embeds for the building project. (Doc. #315, p. 61). Plaintiff has produced evidence from which a reasonable jury could conclude that Plaintiff suffered a loss due to missing embeds that Defendant was obligated to provide. (*See*, e.g., Doc. #315-6, p. 2). Summary judgment is not appropriate on this aspect of Plaintiff's claims.

Finally, Defendant argues partial summary judgment is proper regarding costs associated with "porte-cochere 'deficiencies,'" "installation of relief angles," "alleged failure to install hanging partitions in the ballroom and meeting rooms to specifications," "elevator guide rails

10

and divider beams," and "improper masonry installation." (Doc. #306, pp. 41–42). The Court disagrees. First, Defendant does not specify the particular costs for which it claims entitlement to summary judgment. Second, Plaintiff has supplied sufficient evidence to create a genuine dispute of material fact that Killian incurred these costs in enforcing its rights under the subcontract.

IV. **Conclusion**

Accordingly, it is **ORDERED** that Defendant ARC Steel, LLC's Motion for Summary Judgment (Doc. #305) is granted in part and denied in part. As to Counts III–VI, the motion is granted. Otherwise, the motion is denied.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: May 13, 2019